*1126
 
 OPINION
 

 Per Curiam:
 

 FACTS
 

 Appellant Richard Rosser (“Rosser”) was hired by the Carson City School District
 
 [1]
 
 as a carpenter in 1980. He held that position until May 3, 1988, when the school district promoted him to the position of acting supervisor.
 

 Rosser suffered from a variety of heart ailments, including a mitral valve prolapse, which was diagnosed in 1984. He successfully underwent mitral valve surgery on March 6, 1989, returning to work in April of that year. He experienced no further problems until February of 1990, when further diagnostic procedures revealed occlusive vascular disease in his left leg.
 

 In June of 1990, co-workers, allegedly competitors for his supervisory position, accused Rosser of misappropriating school building materials for his private cabinet business. A police investigation ensued of which Rosser was aware. On July 19, 1990, Rosser’s heart ailments resurfaced when doctors detected
 
 *1127
 
 atrial fibrillations. On August 14, 1990, after experiencing increasing symptoms of congestive heart failure, Rosser was admitted to Saint Mary’s Hospital in Reno for cardioversion to restore his normal heart rhythm. Then, on September 7, 1990, after being charged with several felony and misdemeanor offenses in connection with the accusations of his co-workers, the school district suspended Rosser without pay or benefits.
 

 Contemporaneous with his suspension, Rosser filed an industrial insurance claim arising from “stress aggravated heart palpitations,” listing the date of injury as July 16, 1990. In response, the SIIS determined that Rosser was suffering from post-traumatic stress disorder. Based upon a review of medical records, Dr. Stephen Savran, an SIIS evaluator, concluded that “Mr. Rosser’s heart condition, either the mitral valve prolapse, or the atrial fibrillation on 7/16/90, [was] not a result of his employment by any stretch of the imagination.”
 

 Rosser returned to work as a maintenance person at Carson High School following dismissal of the criminal charges in mid 1991.
 
 [2]
 
 Unfortunately, after approximately one year, Rosser found his working situation intolerable because of demands made upon him by his supervisor.
 
 [3]
 
 For example, Rosser claims he was expected, as a condition of continued employment, to master all of the school’s heating, ventilation, air conditioning, plumbing, electrical systems and computers. In March of 1992, at age 62, he resigned and has not resumed employment.
 

 In April of 1993, the SIIS obtained a second medical evaluation from Dr. Lynn Gerow, a board-certified psychiatrist and neurologist. Dr. Gerow concluded that Rosser was suffering from employment related “post-traumatic stress disorder, in remission, with residuals on medication.” With regard to pre-existing non-industrial conditions, Dr. Gerow found that Rosser was: “Status post cardiac bypass surgery with ongoing problems of mitral valve regurgitation and cardiac arrhythmias requiring multiple hospitalizations for stabilization.”
 

 On March 23, 1994, the SIIS found Rosser to be permanently and totally disabled. Dr. Robert Brown, Chief Medical Advisor to the SIIS, evaluated the medical record and found that Rosser was suffering from “Mitral valve regurgitation with secondary left ventricular cardiomyopathy and Congestive Heart Failure, stabilized . . . and Atrial fibrillation, electroconverted . . . .” Using the AMA guidelines for valvular heart disease and arrhyth-mias, Dr. Brown concluded that the pre-existing heart problems
 
 *1128
 
 represented a thirty-six percent disability of the whole person. Rosser’s benefits were therefore reduced per NRS 616.580 (now, 616C.440), the statutory provision requiring apportionment of permanent total disabilities (“PTD”). Rosser appealed this determination on the ground that the apportionment addressed a non-disabling pre-existing condition, to wit: the mitral valve prolapse and associated arrhythmias. The hearing officer reversed the reduction of benefits on grounds that the apportionment was not adequately supported by documentation. The SIIS, in turn, took the matter to the appeals division of the SIIS Department of Administration claiming that Nevada Administrative Code (NAC) 616.650 required apportionment. The school district, by and through its agent, filed a separate appeal. The appeals officer reinstated the initial reduction of the award based upon the apportionment of Rosser’s preexisting, non-industrial heart condition. Rosser now appeals the district court’s denial of his petition for judicial review of the appeals officer’s ruling.
 

 DISCUSSION
 

 This court is free to decide pure legal questions without deference to an agency’s determination; however, “an agency’s conclusions of law which are closely related to the agency’s view of facts are entitled to deference.” Installation & Dismantle v. SIIS, 110 Nev. 930, 932, 879 P.2d 58, 59 (1994). Statutory construction is a question of law which invites independent appellate review of an administrative decision. Maxwell v. SIIS, 109 Nev. 327, 329, 849 P.2d 267, 269 (1993).
 

 Apportionment under NRS 616.580
 

 [4]
 

 NRS 616.575, at the time of this industrial injury, read as follows:
 

 Permanent total disability: Injuries deemed total and permanent.
 

 1. In cases of the following specified injuries, in the absence of proof to the contrary, the disability caused thereby shall be deemed total and permanent:
 

 (a) The total and permanent loss of sight of both eyes.
 

 (b) The loss by separation of both legs at or above the knee.
 

 (c) The loss by separation of both arms at or above the elbow.
 

 (d) An injury to the spine resulting in permanent and
 
 *1129
 
 complete paralysis of both legs or both arms, or one leg and one arm.
 

 (e) An injury to the skull resulting in incurable imbecility or insanity.
 

 (f) The loss by separation of one arm at or above the elbow, and one leg by separation at or above the knee.
 

 2. The enumeration in subsection 1 is not exclusive, and in all other cases permanent total disability must be determined by the insurer in accordance with the facts presented.
 

 To qualify for permanent total disability status, a claimant’s disability must either fall under one of the scheduled disabilities listed under NRS 616.575(1),
 
 [5]
 
 or qualify under the residual catch-all category as provided in NRS 616.575(2) for injuries not specifically enumerated in subsection (1). Awards of disability under subsection (2) implicate what is commonly referred to as the “odd-lot” doctrine. Nevada Indus. Comm’n v. Hildebrand, 100 Nev. 47, 675 P.2d 401 (1984).
 
 [6]
 
 The parties to this appeal agree that Rosser’s disability falls within the “odd-lot” category.
 

 Where a claimant is deemed permanently and totally disabled, NRS 616.580 (now NRS 616C.440) requires that, under certain circumstances, previous disabilities (extant at the time of the subject or “subsequent” industrial injury) be apportioned from any permanent total disability award. At the time relevant to this claim, NRS 616.580(l)(b) provided in relevant part:
 

 (b) If there is a previous disability, as the loss of one eye, one hand, one foot or any other previous permanent disability, the percentage of disability for a subsequent injury must be determined by computing the percentage of the entire disability and deducting therefrom the percentage of the previous disability as it existed at the time of the subsequent injury.
 
 [7]
 

 Rosser contends that an apportionment of a permanent total disability is improper if the preexisting condition is non-
 
 *1130
 
 disabling. He maintains that respondents were not justified in apportioning thirty-six percent of his PTD award because he was not disabled by his preexisting heart condition. Thus, Rosser’s argument turns on whether his heart condition constituted a “disability” for purposes of 616.580(l)(b). He also contends that the AMA Guides should not have been utilized because they are inapplicable to PTD claims.
 

 Rosser’s preexisting heart condition
 

 As support for the proposition that the preexisting heart condition was non-disabling, Rosser refers us to Dr. Gerow’s finding that there was “no pre-existing condition which may have contributed to [his] current condition.” Rosser further notes that he worked for the school district for ten years without any disabling heart complications. He maintains that he was not disabled until his supervisor told him that he would receive an unfavorable performance review unless he could master all of the high school maintenance systems.
 

 Respondents rely on numerous entries in the medical record in support of their argument that Rosser’s preexisting heart condition was disabling. Examples include Dr. Savran’s conclusion that Rosser’s post-operative atrial fibrillation, which required continued medications to control, was an expected component of his heart disease; notations that the February 26, 1990, carotid angiodynography was performed following complaints of intermittent dyspnea, chest pain, lightheadedness and palpitations; and documentation of symptoms of congestive heart failure which required Rosser to undergo cardioversion on August 14, 1990.
 

 Dr. Grant Miller stated in Rosser’s March 1992 psychiatric assessment that Rosser’s “[rjeturn to work would certainly contribute to him having a major depression and/or cause cardiac difficulties.” Rosser’s psychotherapist, Dr. Jack Araza, concluded in his recommendations to the SIIS that, in addition to the emotional incapacitation, “[t]here is the additional concern for his physical health as he has a heart condition.” Thus, respondents maintain that Rosser’s preexisting heart condition compels an apportionment of his PTD award.
 

 Reliance on the AMA Guidelines
 

 Respondents contend that permanent
 
 total
 
 disability awards under NRS 616.580(1)(b) should be determined in the same manner as permanent
 
 partial
 
 disabilities under NRS 616.605(6),
 
 [8]
 
 to wit: by utilization of the American Medical Association
 
 *1131
 

 Guides to the Evaluation of Permanent Impairment
 
 (“AMA Guides”). This position is taken despite the fact that NRS 616.580, the PTD apportionment statute, failed to provide its own mechanism or formula for the apportionment of prior existing disabilities, and makes no reference to the methods set forth for permanent partial disabilities (“PPD”) apportionment under NRS 616.605. Respondents argue, however, that the PTD and PPD apportionment provisions are “mirror images” of one another and must be read together in harmony. They contend that a harmonious reading of these provisions requires that the same formula be applied for both PTD and PPD apportionments, and that the omission of a formula from the PTD provisions manifests legislative intent that, for consistency in enforcement, the AMA Guides be used in both instances. Further, they argue that using the AMA Guides as required for PPD purposes, NAC 616.650
 
 [9]
 
 of the Nevada Administrative Code, the regulation governing apportionment of permanent partial disabilities, provides parameters for apportionment of “any” permanent disability or impairment. Thus, SIIS directs its medical advisors to rely on NAC 616.650 for apportioning
 
 permanent total disabilities,
 
 and to utilize the AMA Guides. Accordingly, Dr. Brown apportioned thirty-six
 
 *1132
 
 percent of Rosser’s PTD pursuant to the AMA Guides and tables. Respondents therefore argue that we should give deference to SIIS’ methodology and interpretation of NRS 616.580, NRS 616.605 and NAC 616.650, given the legislature’s silence in this regard. We disagree.
 

 First, we note that the American Medical Association itself has recognized that the AMA Guides are ill equipped to rate such subjective factors as one’s age, training or education.
 
 [10]
 
 Although the legislature has concluded that the guides are appropriate for evaluation of partial disabilities, we believe that the omission of the AMA Guides from the PTD provisions was based on legitimate concerns that such apportionments would be arbitrary or that the AMA Guides had less validity in the context of PTD awards. Thus, we hold that the Guides are but one of a number of resources that can be utilized in assessing the degree to which apportionment is appropriate.
 

 In SIIS v. Bokelman, 113 Nev. 1116, 946 P.2d 179 (1997), we held that apportionment of a permanent total disability award is proper if, in the absence of a prior industrial disability award, the inability to return to work was caused in part by a prior nonindustrial disability.
 
 Id.
 
 at 1124.
 
 [11]
 
 Here, Rosser’s pre-existing heart condition may have played a role in the permanent cessation of employment. In this regard, we note that he originally claimed to have sustained “stress aggravated heart palpitations” and obtained a determination from the SIIS that he was suffering from “post-traumatic stress syndrome.” In our reading of the record below, we note that Dr. Brown, the physician who apportioned Rosser’s award, could have provided substantive support for apportioning Rosser’s PTD at the hearing held before the appeals officer. However, Dr. Brown gave short shrift to the underlying basis for his decision in his memorandum to SIIS. He merely noted Rosser’s diagnosis and mechanically apportioned his award according to the AMA Guides.
 

 
 *1133
 
 On remand, the SIIS must support its decision to apportion Rosser’s PTD award with documentation comprehensively addressing the scope and nature of Rosser’s preexisting heart condition.
 
 [12]
 
 SIIS must, per
 
 Bokelman,
 
 establish that Rosser’s heart problems, separate and apart from the societal factors causing “odd-lot” disability,
 
 [13]
 

 [14]
 
 prevented him from returning to the work force in some other reasonably constructive capacity.
 
 [15]
 
 Thus, the SIIS must provide substantive documentation correlating application of the AMA Guide.
 
 [16]
 

 We have reviewed all of the other arguments and issues raised by the parties and conclude that they are without merit.
 

 CONCLUSION
 

 For reasons discussed above, we reverse the order of the district court and remand with instructions that the district court entertain Rosser’s petition for judicial review and remand the matter to the appeals officer for further proceedings consistent with this opinion.
 

 Amended in 1995 and recodified as NRS 616C.440.
 

 [1]
 

 Hereinafter, respondents, State of Nevada; SIIS; Department of Administration, Hearings Division; Deborah Scott Gallagher, in her capacity as Appeals Officer; and Carson City School District, are collectively designated “respondents.”
 

 [2]
 

 This was not a demotion. It appears that a subordinate had been given Rosser’s former position as a supervisor during his suspension.
 

 [3]
 

 The supervisor was allegedly involved in the events leading to Rosser’s suspension.
 

 [5]
 

 Recodified as NRS 616C.435.
 

 [6]
 

 Under the “odd-lot” doctrine, consideration of factors other than physical impairment is necessary to determine whether a non-scheduled injury qualifies the worker for permanent total disability benefits. “Such factors may include, among others, the worker’s age, experience, training and education.”
 
 Hildebrand,
 
 100 Nev. at 51, 675 P.2d at 404.
 

 [7]
 

 Societal factors such as age, experience, training and education that are considered in connection with “odd-lot” status are not apportionable. Only medical or emotional conditions susceptible of diagnosis by a health care professional are subject to apportionment under NRS 616.580.
 

 [8]
 

 Revised in revision as NRS 616C.490(8).
 

 [9]
 

 NAC 616.650 provides in pertinent part:
 

 616.650 Apportionment of impairments.
 

 1. If any permanent impairment from which an employee is suffering following an accidental injury or the onset of an occupational disease is due in part to the injury or disease, and in part to a preexisting or intervening injury, disease or condition, the evaluating physician, except as otherwise provided in subsection 8, shall determine the portion of the impairment which is reasonably attributable to the injury or occupational disease and the portion which is reasonably attributable to the preexisting or intervening injury, disease or condition. The employee may receive compensation for that portion of his impairment which is reasonably attributable to the subsequent injury or occupational disease and may not receive compensation for that portion which is reasonably attributable to the preexisting or intervening injury, disease or condition.
 

 6. If there are preexisting conditions, such as degenerative arthritis, rheumatoid variants, obesity or congenital malformations, the apportionment must be supported by documentation concerning the scope and the nature of the impairment which existed before the industrial injury or the onset of disease.
 

 7. A physician shall always explain the underlying basis of the apportionment as specifically as possible by citing pertinent data in the medical or other records.
 

 8. If no documentation exists pursuant to subsection 6 or 7, the impairment may not be apportioned.
 

 10. The impairment of an upper extremity must be apportioned in accordance with the American Medical Association’s Guides to the Evaluation of Permanent Impairment.
 

 [10]
 

 “The critical problem is that no formula is known by which knowledge about a medical condition can be combined with knowledge about other factors to calculate the percentage by which the employee’s industrial use of the body is impaired. The
 
 AMA Guides
 
 may help resolve such a situation but it cannot provide complete and definitive answers. Each administrative or legal system that uses permanent impairment as a basis for disability ratings should define its own means for translating knowledge about an impairment into an estimate of the degree to which the impairment limits the individual’s capacity to meet personal, social, occupational, and other demands or to meet statutory requirements.”
 
 American Med. Ass'n, Guides to the Evaluation of Permanent Impairment
 
 § 1.5, at 4-5 (4th ed. 1993).
 

 [11]
 

 NAC 616.650(1) recognizes this condition precedent to apportionment under NRS 616.605.
 

 [12]
 

 This too is required under NAC 616.650.
 

 [13]
 

 See footnote 7,
 
 supra.
 

 [14]
 

 Appellant argues that it is improper to apportion non-disabling preexisting conditions. This is only partially true. Apportionment is appropriate where (1) the prior condition, while not disabling at the time of the industrial injury, plays a role in preventing the employee’s return to work, and (2) the employee’s wage was not affected by the prior disability. See Bokelman.
 

 [15]
 

 There is no evidence, and Rosser seems to concede, that his wage at the time of cessation of employment was unaffected by his heart condition.
 
 See Bokelman.
 

 [16]
 

 The district court below noted that there was substantial evidence in the administrative record to justify apportionment. This may still hold true following further proceedings at the administrative level. However, because
 
 Bokelman,
 
 for the first time, provides specific guidance regarding apportionment of PTD’s, and because our holding today expands on that ruling, the matter must be remanded for a more complete evaluation of the claim before the appeals officer consistent with this opinion.
 

 We do not need to reach respondents’ arguments under NRS 616.110(2). In the event that Rosser’s heart condition is subject to apportionment, no permanent benefits will be paid in connection therewith. If it is not subject to apportionment, the condition cannot be a cause of the disability.