*1118
 
 OPINION
 

 Per Curiam:
 

 FACTS
 

 William Bokelman sustained severe head injuries in 1970 following an altercation unrelated to his employment as a firefighter with the city of Reno. Unfortunately, residual dysphasia and impaired memory forced him to leave that position. For years thereafter, he was employed with the city of Reno Streets and Parks Department.
 

 Between 1970 and 1989, Bokelman experienced no difficulty performing his job duties. However, on September 5, 1989, he twisted his back at work while lifting trash. After attempts at conservative treatment failed, Bokelman underwent back surgery on December 20, 1989. Although Bokelman returned to work after the surgery, his back pain became so severe that he was forced to retire. On October 10, 1990, Dr. Adolf Rosenauer, M.D., a Reno neurosurgeon, found that Bokelman was permanently and totally disabled.
 

 On November 12, 1990, using the American Medical Association’s
 
 Guides To The Evaluation Of Permanent Impairment,
 
 (hereinafter “AMA Guides”), Dr. Gordon Nitz found Bokelman to be twelve percent permanently partially disabled on a whole body basis (“PPD”) from the back injury. More specifically, seven percent of the disability was attributed to lack of range of motion and five percent to intervertebral disc disease.
 

 On August 7, 1991, at SIIS’ request, Dr. Lynn Gerow, a psychiatrist and neurologist, examined Bokelman to evaluate his closed-head injury. Using the AMA guides for rating “Whole Person Impairment,” Dr. Gerow determined that Bokelman’s 1970 head injury accounted for forty-eight percent of his impairment.
 

 A “Permanent Total Disability Panel” considered Bokelman for permanent total disability (“PTD”) status. On November 1, 1991, after rehabilitation tests and medical reports indicated that
 
 *1119
 
 he was not employable, the panel approved Bokelman for PTD status with a recommendation for apportionment. On October 9, 1992, the SIIS Pensions Department notified Bokelman that his disability had been apportioned as only fifty-two percent industrially related. Accordingly, Bokelman’s monthly compensation of $1412.03 was reduced to $734.26 per month.
 

 Bokelman appealed this determination. The Department of Administration hearing and appeals officers affirmed the apportionment. On judicial review, the First Judicial District Court reversed the appeals officer’s decision. The SIIS appeals the ruling of the district court.
 

 DISCUSSION
 

 On questions of fact, an administrative agency’s decision is given deference; therefore, a reviewing court must confine its inquiry to determining whether the record provides substantial evidence supporting the administrative agency’s decision. Installation & Dismantle, Inc. v. SIIS, 110 Nev. 930, 932, 879 P.2d 58, 59 (1994). “Although a reviewing court may decide pure legal questions without deference to an agency determination, an agency’s conclusions of law which are closely related to the agency’s view of the facts are entitled to deference.”
 
 Id.
 
 at 932, 879 P.2d at 59. Statutory construction is a question of law which invites independent appellate review of an administrative decision. Maxwell v. SIIS, 109 Nev. 327, 329, 849 P.2d 267, 269 (1993).
 

 A.
 
 Determining eligibility for PTD status
 

 Qualifications for PTD status are determined by NRS 616C.435:
 
 [1]
 

 Injuries deemed total and permanent.
 

 1. In cases of the following specified injuries ... the disability caused thereby shall be deemed total and permanent:
 

 (a) The total and permanent loss of sight of both eyes.
 

 (b) The loss by separation of both legs at or above the knee.
 

 (c) The loss by separation of both arms at or above the elbow.
 

 (d) An injury to the spine resulting in permanent and complete paralysis of both legs or both arms, or one leg and one arm.
 

 
 *1120
 
 (e) An injury to the skull resulting in incurable imbecility or insanity.
 

 (f) The loss by separation of one arm at or above the elbow, and one leg by separation at or above the knee.
 

 2. The enumeration in subsection 1 is not exclusive, and in all other cases permanent total disability must be determined by the insurer in accordance with the facts presented.
 

 If an employee does not have a scheduled injury as provided for in subsection (1) of NRS 616C.435, the employee may be eligible for PTD status under the residual or catch-all category as provided in NRS 616C.435(2). Awards under subsection (2) implicate what is commonly referred to as the “odd-lot” doctrine.
 
 [2]
 

 In Nevada Indus. Comm’n v. Hildebrand, 100 Nev. 47, 675 P.2d 401 (1984), we noted that “consideration of factors other than physical impairment is necessary to determine whether a nonscheduled injury qualifies the worker for permanent total disability benefits under the odd-lot doctrine. Such factors may include, among others, the worker’s age, experience, training and education.”
 
 Hildebrand,
 
 100 Nev. at 51, 675 P.2d at 404. In evaluating permanent total disability claims, the focus of the analysis is on the degree to which the physical impairment has hindered a worker’s earning capacity.
 
 Id.
 

 SIIS found Bokelman eligible for PTD status under NRS 616C.435(2). Once such a determination is made, NRS 616C.440 mandates apportionment for preexisting disabilities in existence at the time of the industrial injury which stimulates the onset of disability (referred to in NRS 616C.440 as the “subsequent injury”).
 

 B.
 
 Determining compensation under NRS 616C.440
 

 If an employee is granted PTD status under NRS 616C.435, NRS 616C.440
 
 [3]
 
 is determinative of the amount of compensation.
 

 
 *1121
 
 616C.440. Amount and duration of compensation; limitations; reduction of compensation of employee who has received compensation in lump sum for permanent partial disability.
 

 1. Except as otherwise provided in this section and NRS 616C.175 [which governs aggravation of preexisting injuries] , every employee . . . who is injured by accident arising out of and in the course of employment ... is entitled to receive the following compensation for permanent total disability:
 

 (a) In cases of total disability adjudged to be permanent, compensation per month of 66 2/3 percent of the average monthly wage.
 

 (b) If there is a previous disability, as the loss of one eye, one hand, one foot or any other previous permanent disability, the percentage of disability for a subsequent injury must be determined by computing the percentage of the entire disability and deducting therefrom the percentage of the previous disability as it existed at the time of the subsequent injury, but such a deduction for a previous award for permanent partial disability must be made in a reasonable manner and must not be more than the total amount which was paid for the previous award for permanent partial disability.
 

 Having applied subdivision 1(a), the inquiry becomes whether subdivision (b) requires apportionment or reduction in connection with Bokelman’s prior non-industrial injury.
 
 [4]
 

 
 *1122
 
 1.
 
 Statutory construction
 

 “Where the language of the statute is plain and unambiguous, such that the legislative intent is clear, a court should not ‘add to or alter [the language] to accomplish a purpose not on the face of the statute or apparent from permissible extrinsic aids such as legislative history or committee reports.’ ”
 
 Maxwell
 
 v.
 
 SIIS,
 
 109 Nev. at 330, 849 P.2d at 269 (citations omitted). “[This court] will not construe a statute to produce an unreasonable result when another interpretation will produce a reasonable result.” Breen v. Caesars Palace, 102 Nev. 79, 82, 715 P.2d 1070, 1072 (1986).
 

 NRS 616C.440(1)(b), contains three distinct features requiring careful scrutiny. First, the provision applies only where there is a “previous disability.” Bokelman’s prior injury is not one of the specified injuries (i.e., loss of eyes, arms, legs), but may fall under the category of “any other previous permanent disability.”
 
 [5]
 
 Secondly, it requires that the percentage of the previous disability, as it existed when the later industrial injury occurred, be deducted from the entire disability. However, the statute fails to provide a formula or guidance for calculating the percentages. Thirdly, the provision clearly states that a deduction for “a previous award” is limited by the “total amount paid for the previous award for permanent partial disability.”
 

 Read in its entirety, section (1)(b) is susceptible of three inconsistent interpretations. First, a broad reading would require apportionment of
 
 any
 
 previous disability. By contrast, a narrow construction would limit apportionment of PTD awards to situations where the claimant had actually received a previous workers’ compensation award for a permanent partial disability. In the absence of a prior workers’ compensation award based upon permanent partial disability, a third construction would more closely examine to what extent, if any, the prior disability affected the claimant’s ability to work at the time of the subsequent injury.
 
 [6]
 

 
 *1123
 
 2.
 
 Legislative intent and history
 

 The legislative history of the 1995 PTD offset provisions is silent as to whether apportionment is permissible absent a previous PPD award. It is clear that, without offset for a prior workers’ compensation award of permanent partial disability, the injured employee would be overcompensated. Thus, the original intent of NRS 616C.440 (formerly NRS 616.580), particularly in light of the 1995 clarifying amendment, was to establish a requirement that PPD awards be credited against PTD awards.
 

 The issue of preexisting injuries was not fully addressed until 1993, when the legislature adopted NRS 616C.175.
 
 [7]
 
 Under that statute, an employee is not entitled to compensation for PPD or PTD if:
 

 (a) He has a preexisting condition from a cause or origin that did not arise out of or in the course of his current or past employment; and
 

 (b) He subsequently sustains an injury by accident arising out of and in the course of his employment which aggravates, precipitates or accelerates his preexisting condition, unless information from a physician . . . establishes . . . that the subsequent injury is the primary cause of the resulting condition.
 

 NRS 616C.440 is prefaced with a reference to this statute, but does not incorporate it since NRS 616C.175 is a complete bar to compensation. In this case, however, 616C.175, even if applicable to 1989 injuries, would not bar recovery. Bokelman’s employment-related back injury was “the primary cause of the resulting condition” — not his previous head injury.
 

 C.
 
 The entire statutory scheme
 

 Where the legislative intent cannot be discerned, a statute can be interpreted according to the entire statutory scheme.
 
 See
 
 Acklin v. McCarthy, 96 Nev. 520, 523, 612 P.2d 219, 220 (1980). Apportioning a previous partial disability, whether the subject of a prior workers’ compensation award or not, is consistent with the overall statutory scheme, even in the case of “odd-lot” disabilities.
 

 SIIS contends that, as a matter of public policy, apportionment of any prior disability is proper because the purpose of Nevada’s workers’ compensation statutes is “to give the proper amount of compensation, not to provide a panacea for all the ills of society at the expense of Nevada’s employers.” While we agree with this
 
 *1124
 
 statement as a general matter, we believe that compensation should be designed to address the disability caused by the workplace injury and that the apportionment and “limitation of benefit” provisions (NRS 616C.440), are intended primarily to avoid duplicate or excess recoveries where prior permanent disability awards have been paid, or where non-employment related maladies contribute to the cessation of employment.
 

 One of the purposes of NRS 616C.440(1)(b) is to ensure in the final analysis that a person will only receive SIIS benefits for injuries sustained in the course of employment and not otherwise. Thus, in addition to ensuring that no duplication of benefits occurs, NRS 616C.440(1)(b) serves as a causation statute. Accordingly, regardless of whether the PTD derives from a scheduled disability under NRS 616C.435(1), or an “odd-lot” disability under NRS 616C.435(2), we hold that apportionment or offset is appropriate where a prior PPD award has been made. In the absence of such an award, we hold that apportionment or offset is appropriate where the prior disability, separate and apart from the societal factors causing the “odd-lot” disability, plays a role in permanently preventing the injured worker from returning to the work force in some other reasonably constructive capacity.
 
 [8]
 
 We also hold that where the prior disability prevents the claimant from seeking other employment, apportionment is only appropriate if, at the time of the “subsequent injury,” the employee’s wage was not affected or influenced by the prior disability.
 

 In the instant case, Bokelman’s prior disability was not the subject of a prior disability award, and did not contribute to the cessation of his employment with the city of Reno. Further, although the sequelae from the prior head injury combined with the work-related back injury prevents him from pursuing any alternate employment, his wage and work status at the time of the subsequent injury were clearly influenced by the prior disability. Thus, no duplication of benefits has occurred. In fact, the calculation of benefits for loss of his job was based presumably on an already reduced salary package, as Bokelman was required to resign his position as a firefighter and take a less desirable position with the streets and parks department following the prior non-industrial injury. We therefore conclude that SIIS erred in apportioning forty-eight percent of Bokelman’s PTD award.
 

 Based on the foregoing analysis, we affirm the district court’s decision to reverse the decision of the appeals officer.
 

 [1]
 

 Substituted in revision for NRS 616.575.
 

 [2]
 

 An individual is considered an “odd-lot” if “he may be capable of holding various jobs from time to time, but that the kind of work he may perform is so limited in quality, dependability or quantity that a reasonably stable market for that work does not exist. . . .” Fancher v. Overhead Doors, Inc., 425 So. 2d 965, 966 (La. App. 1983) (citing Oster v. Wetzel Printing, Inc., 390 So. 2d 1318 (La. 1980)).
 

 [3]
 

 Substituted in revision for NRS 616.580. Both parties rely on the 1995 amendment to NRS 616.580 and fail to cite the controlling statute at the time of Bokelman’s injury. Bokelman was injured in 1989 and the SIIS granted Bokelman PTD status in 1992; therefore, the pre-1995 version of NRS 616.580(2) (now, NRS 616C.440(1)(b)) governs. In this case, the appeals officer determined that, when read together, NRS 616.580(2) and NRS
 
 *1121
 
 616.605(6) (entitled “Permanent partial disability: compensation”) required apportionment of an “odd-lot” disability as if it were a scheduled disability.
 

 The language of NRS 616.580(2) essentially remains unchanged in the renumbering process to 616C.440(l)(b). NRS 616.605(6) covering permanent partial disabilities also remained unchanged as it became NRS 616.605(7) and, currently, NRS 616C.490(8).
 

 However, NRS 616C.440 as quoted in the text of this opinion, is the result of a 1995 amendment adding language to clarify the scope of apportionment where the claimant has received a prior workers’ compensation award based upon permanent partial disability.
 

 NRS 616.580(2) as written between 1985 and 1993 stated:
 

 Where there is a previous disability, as the loss of one eye, one hand, one foot, or any other previous permanent disability, the percentage of disability for a subsequent injury must be determined by computing the percentage of the entire disability and deducting therefrom the percentage of the previous disability as it existed at the time of the subsequent injury.
 

 Although the 1995 amendatory language post-dates the injury sustained by Mr. Bokelman, it is analyzed here because it merely serves to clarify existing doctrine.
 

 [4]
 

 The societal factors such as age, experience, training and education that are considered in connection with “odd-lot” status are not apportionable.
 
 *1122
 
 Only medical or emotional conditions susceptible of diagnosis by a health care professional are subject to apportionment under NRS 616.580 (now, NRS 616C.440).
 

 [5]
 

 The statutory language does not explicitly differentiate between industrial and non-industrial disabilities (i.e., it does not unequivocally make a prior workers’ compensation disability award an exclusive precondition of apportionment).
 

 [6]
 

 Other courts have held that, where a preexisting injury has not been found to impair an employee in his work duties, the preexisting condition will not be apportioned out of the disability award.
 
 See
 
 Escambia Cty. Council on Aging v. Goldsmith, 500 So. 2d 626, 636 (Fla. App. 1986); Newman v. Workers’ Compensation Appeals Bd., 199 Cal. Rptr. 422 (Cal. App. 1984).
 

 [7]
 

 Substituted in revision for NRS 616.50185.
 

 [8]
 

 See footnote 4,
 
 supra.