TERRY NYLUND AND MARY ANN NYLUND, HUSBAND AND WIFE, APPELLANTS, *v.* CARSON CITY, A CONSOLIDATED MUNICIPALITY, RESPONDENT.

No. 35551

November 21, 2001                                    34 P.3d 578

*Evan Beavers & Associates, PC,* and *John H. Martin,* Minden, for Appellants.

*Noel S. Waters,* District Attorney, and *Neil A. Rombardo,* Deputy District Attorney, Carson City, for Respondent.

Before SHEARING, AGOSTI and ROSE, JJ.

## OPINION

By the Court, AGOSTI, J.:

This case arises from the 1996-1997 winter flood in Carson City, Nevada. Attempting to control the flood, Carson City decided to channel the waters down East Fifth Street. Some of the water overflowed from the city's storm drainage system and flooded Terry and Mary Ann Nylund's condominium. The Nylunds sued Carson City, alleging, among other things, that the city was negligent in its handling of the flood and that the city's storm drainage system had design and maintenance defects. We must determine whether NRS 414.110, the emergency management immunity statute, shields Carson City from liability in this case. We conclude that it does.

### FACTS

The winter of 1996-1997 was the third wettest in Nevada's recorded history. Rains and melting snow produced an enormous quantity of surface water that began to flood portions of residences and businesses in Carson City. In response, the city manager declared the situation an emergency disaster and requested the State's assistance.

Carson City employees determined that sandbagging certain areas—in order to channel the water down East Fifth Street along its natural, eastbound course toward the Carson River—was the best way to control the floodwaters. On January 1, 1997, floodwaters flowing down Fifth Street overflowed storm drains, ran across the adjacent properties of the Order of Eagles and the Carson Park Condominiums, and eventually flooded the Nylunds' condominium.

One year later, the Nylunds sued Carson Park Condominium Homeowners Association, the Carson Aerie No. 1006 of the Fraternal Order of Eagles, and Carson City. The Nylunds alleged

causes of action in trespass, nuisance, wrongful channeling of waters, and negligence against the defendants.

In response, Carson City moved for summary judgment. Carson City argued that it was immune from liability for its emergency management activities under NRS 414.110 and for its pre-flood activities under NRS 41.032 and NRS 41.033. Carson City supported the motion with the affidavits of two city employees, climatological reports, and records showing that the city had declared the flood an emergency.

The Nylunds opposed the motion based on NRCP 56(f), arguing that they needed more time to conduct discovery. In their opposition, the Nylunds alleged that Carson City knew as early as 1983 that its storm drain system had certain design or maintenance defects. In support of that allegation, the Nylunds offered a 1983 report sent to the city manager, written by a Carson City employee who had investigated a previous flood at the Carson Park Condominiums. The report alerted the city manager to ''a low spot at Como and Saliman which floods during unusual rain storms'' that may have contributed to the previous flood. The report also expressed concern that the city could be held liable for its ''failure to provide adequate drainage flow.''

The district court denied the Nyland's request for additional discovery and granted Carson City's motion for summary judgment, concluding that there was no issue of material fact because Carson City was completely immune from suit under NRS 414.110.

The Nylunds appealed.

## DISCUSSION

*Scope of immunity for emergency management activities under NRS 414.110*

On appeal, the Nylunds contend that the district court misapplied the emergency management immunity statute by failing to distinguish between the Nylunds' allegations regarding the city's negligence in handling the flood, and their allegations regarding the city's negligence in its pre-flood activities. In particular, they argue that the city's pre-flood activities, such as its design, operation, and maintenance of the storm drains, are not activities related to emergency management, and therefore are not covered by the immunity created in NRS 414.110.

In reviewing the district court's grant of summary judgment, we must decide whether the district court has properly read and

applied the law, a question we review de novo.[1] Summary judgment is only appropriate in the absence of a genuine issue of material fact.[2]

NRS 414.110, the statute upon which the district court granted summary judgment, immunizes government entities from liability arising out of emergency management activities:

> 1. All functions under this chapter and all other activities relating to emergency management are hereby declared to be governmental functions. Neither the state nor any political subdivision thereof nor other agencies of the state or political subdivision thereof . . . is liable for the death of or injury to persons, or for damage to property, as a result of any such activity.

To resolve the issue the Nylunds present, we must construe NRS 414.110. When construing statutes, we seek to give effect to the legislature's intent.[3] To do so, we first look to the plain language of the statute.[4] But if the statutory language is ambiguous or otherwise does not speak to the issue before us, we construe it according to that which "reason and public policy would indicate the legislature intended."[5] Also, we may infer legislative intent by reading a particular statutory provision in the context of the entire statutory scheme.[6]

Turning first to the plain language of NRS 414.110, we note that it does not specifically address the issue at hand—whether a government entity can claim immunity under the statute for its pre-emergency negligence that contributed to damage caused by later emergency management activities.

But we can infer the legislative intent from the other sections of the same statutory chapter. The express purpose of NRS Chapter 414 is to empower the State and local governments to prepare for and swiftly respond to emergencies and disasters that imperil life and property, such as fire, flood, earthquake, and enemy attack.[7] To this end, the legislature granted immunity for

---

[1] *Calloway v. City of Reno,* 116 Nev. 250, 256, 993 P.2d 1259, 1263 (2000).

[2] *Id.;* NRCP 56(c).

[3] *Cleghorn v. Hess,* 109 Nev. 544, 548, 853 P.2d 1260, 1262 (1993).

[4] *Salas v. Allstate Rent-A-Car, Inc.,* 116 Nev. 1165, 1168, 14 P.3d 511, 513-14 (2000).

[5] *State, Dep't of Mtr. Vehicles v. Lovett,* 110 Nev. 473, 477, 874 P.2d 1247, 1249-50 (1994) (quoting *State, Dep't Mtr. Vehicles v. Vezeris,* 102 Nev. 232, 236, 720 P.2d 1208, 1211 (1986)).

[6] *SIIS v. Bokelman,* 113 Nev. 1116, 1123, 946 P.2d 179, 184 (1997).

[7] *See* NRS 414.020 (setting forth the policy and purpose of the chapter).

"death of or injury to persons, or for damage to property" that result from negligence in managing an emergency.[8] The sound public-policy reasons behind this language are apparent. An emergency is a sudden and unforeseen crisis,[9] and the damage it causes can spread quickly. When facing an emergency, the government entity leading the response operation does not have time to deliberate and chart a course calculated to provide the customary degree of due care. Thus, the legislature gave the response authority substantial decision-making latitude, allowing it to make quick decisions to avert disaster, decisions that critics—with the benefit of hindsight—might later call negligent.

In light of the policy behind NRS 414.110, we disagree with the Nylunds' contention that it does not immunize the city for its alleged pre-flood negligence. We read the immunity statute to cover not only negligent emergency management, but also any previous negligence that contributed to the damage caused by the emergency management activities. This is a natural extension of the policy underlying NRS 414.110. Because emergencies are sudden and unexpected, the response authority does not have time to assess whether unknown or unforeseen obstacles created by past negligence will hinder its course of action. For instance, in this case, even if we accept the Nylunds' argument that their residence would not have been flooded but for the city's pre-flood negligence in designing, operating, and maintaining the drainage system, we cannot imagine that the city had time to fully assess the drainage system's actual capacity before channeling the floodwaters down Fifth Street.

We conclude that NRS 414.110 prevents the Nylunds from attacking the city's emergency management activities and its negligent pre-flood design, operation, or maintenance activities that are causally related to damage caused by the emergency management activities. Accordingly, we conclude that the district court correctly read NRS 414.110 as immunizing Carson City from the Nylunds' action and properly granted summary judgment in Carson City's favor.[10]

---

[8]NRS 414.110.

[9]*See Black's Law Dictionary* 361 (6th ed. abridged 1991) (defining "emergency" as "an unforeseen combination of circumstances that calls for immediate action without time for full deliberation").

[10]*See* NRCP 56(c) (stating that summary judgment is appropriate when "there is no genuine issue as to any material fact and [ ] the moving party is entitled to a judgment as a matter of law").

In light of our conclusion that there was no genuine issue of material fact, we also conclude that the district court did not abuse its discretion in denying the Nylunds' NRCP 56(f) motion for a continuance. *See Bakerink v. Orthopaedic Associates, Ltd.*, 94 Nev. 428, 431, 581 P.2d 9, 11 (1978) (noting that a NRCP 56(f) motion should be granted only if there is a genuine issue of material fact).

*Immunity for local government entities under NRS 414.110*

The Nylunds next contend that Carson City cannot avail itself of the emergency management immunity provided by NRS 414.110 because the Governor had not declared the flood an emergency according to NRS 414.0345; the statute defines "emergency" as "an occurrence or threatened occurrence for which, *in the determination of the governor,* the assistance of state agencies is needed."[11]

Carson City does not counter the Nylunds' assertion that the governor had not declared the flood an emergency, but argues instead that it was empowered by its own municipal code to declare an emergency and claim immunity thereby:

> All functions under this chapter and all other activities relating to emergency management are hereby declared to be governmental functions. Pursuant to NRS 414.110, the city is not liable for the . . . property damage as a result of any emergency service worker complying with or reasonably attempting to comply with this chapter.[12]

Thus, we must next decide whether NRS 414.110 allows Carson City itself to declare an emergency, or whether the governor-determination procedure is the only procedure available for triggering immunity.

As set forth above, when construing a statute we are guided first by the statute's plain language, and if that fails, by its policy, which we can infer from the context of the statute within its overall scheme.

Construing NRS 414.0345 accordingly, we first observe that the plain language of the section itself does not state whether or not the governor-determination procedure is exclusive.

Other sections of the Emergency Management chapter, however, indicate that the legislature intended to empower local governments with emergency management powers and immunity. Foremost, NRS 414.110(1) provides immunity for *"[a]ll functions* under this chapter and all other activities relating to emergency management."[13] Correspondingly, NRS 414.090(1) indicates that emergency management at the local level constitutes one of the "functions under this chapter" that NRS 414.110 refers to:

> *Each political subdivision of this state may establish a local organization for emergency management* in accordance with

---

[11]Emphasis added.

[12]Carson City Municipal Code 6.02.060(1).

[13]Emphasis added.

the state emergency management plan and program for emergency management. . . . *Each local organization for emergency management shall perform functions of emergency management* within the territorial limits of the political subdivision within which it is organized, and, in addition, shall conduct such functions outside of such territorial limits as may be required.[14]

In addition, the statement of the policy and procedure of the emergency management chapter reflects the legislature's intent to localize emergency management efforts:

(a) To create a state agency for emergency management and to *authorize the creation of local organizations* for emergency management in the political subdivisions of the state.

(b) To confer upon the governor and upon the executive heads or *governing bodies of the political subdivisions of the state* the emergency powers provided in this chapter.[15]

Because the legislature clearly intended to empower local governments with the power to respond to emergencies, we conclude that the legislature also intended to grant the local governments immunity for their actions taken under the chapter. Accordingly, we conclude that Carson City was allowed to declare an emergency itself in accordance with its municipal code and thereby claim the immunity of NRS 414.110.

## CONCLUSION

We affirm the district court's order granting summary judgment in favor of Carson City. Carson City is immune from liability for the damage to the Nylunds' condominium stemming from the city's emergency management activities in controlling the 1996-1997 winter flood. Additionally, we conclude that the city did not need the governor's formal "emergency" determination in order to claim immunity.

SHEARING, J., concurs.

ROSE, J., dissenting:

The Nylunds' condominium was seriously damaged in the major Carson City flood of 1996-1997 that was created by melting snow and rain running down Fifth Street in Carson City, a flood drainage area designated by the city. The Nylunds have shown that their damage may have been caused by a low spot in the flood drainage area near their home and that Carson City had

---

[14]Emphases added.

[15]NRS 414.020(1) (emphases added).

been notified about this problem fifteen years earlier. At this early stage of the proceeding, we do not know whether the city had done anything to correct the problem. If this case were permitted to go to trial, a jury might ultimately find this inaction to be negligence. I do not think responsibility for this alleged negligent act that resulted in damage fifteen years later should be excused simply because an emergency situation was created when the damage occurred.

The alleged negligence of Carson City in failing to address a recognized flaw in its flood control plan would be actionable when the negligence was recognized and the damage sustained—that being early 1997. We have recognized similar lawsuits for damages.[1] However, the majority holds that the negligence that occurred more than a decade earlier is not actionable if the later flood and damage resulted in the authorization of emergency powers that in turn invoked immunity for those acting to address the immediate problem. I believe this is giving greater immunity than the legislature intended when it enacted NRS 414.110, the emergency management immunity statute.

The purpose of the emergency management immunity statute is to grant protection to those who are taking immediate action in a crisis situation. Nothing indicates that the statute is meant to forgive all prior negligent acts contributing to the crisis at hand. Statutes limiting Nevada's long-standing waiver of sovereign immunity are to be strictly construed.[2] Rather than follow this well-established legal direction, the majority gives the emergency management immunity statute an expansive interpretation that is not justified by the statute itself or by our case law.

Further, the emergency management immunity statute specifically states that immunity attaches to all those acting in a crisis when the Governor declares an emergency. The majority concludes that anyone in some office of authority has the power to declare the emergency and thus invoke the statutory immunity protection. In this case, it was the City Manager of Carson City. I believe this too is error.

We have often stated, "[w]here the language of a statute is plain and unambiguous, and its meaning clear and unmistakable, there is no room for construction, and the courts are not permitted to search for its meaning beyond the statute itself."[3] The emergency

---

[1]*See, e.g., Foley v. City of Reno,* 100 Nev. 307, 680 P.2d 975 (1984); *Crucil v. Carson City,* 95 Nev. 583, 600 P.2d 216 (1979); *State v. Webster,* 88 Nev. 690, 504 P.2d 1316 (1972); *Harrigan v. City of Reno,* 86 Nev. 678, 475 P.2d 94 (1970).

[2]*See State v. Silva,* 86 Nev. 911, 914, 478 P.2d 591, 593 (1970).

[3]*Erwin v. State of Nevada,* 111 Nev. 1535, 1538-39, 908 P.2d 1367, 1369 (1995).

management immunity statute specifically requires an emergency called by the Governor to trigger immunity. I find this legislative directive clear and unambiguous and would enforce it as written. Since it is undisputed that neither the Governor nor his office declared this emergency, the immunity statute should be declared inapplicable in this case.

Accordingly, I would reverse and remand for trial.