STATE OF NEVADA DEPARTMENT OF HUMAN RESOURCES, WELFARE DIVISION, APPELLANT, v. ESTATE OF HAROLD J. ULLMER, DECEASED; AGNES T. ULLMER; ESTATE OF HELEN PARCO, DECEASED; AND MICHAEL F. PARCO, SR., RESPONDENTS.

No. 40143

April 1, 2004                                    87 P.3d 1045

[Rehearing denied May 27, 2004]

*Brian Sandoval,* Attorney General, and *Charles Hilsabeck, Heather E. Kemp,* and *Sabrina Grindle Raetz,* Deputies Attorney General, Carson City, for Appellant.

*James M. O'Reilly,* Las Vegas; *Rochelle Bobroff,* Washington, D.C., for Respondents Estate of Harold J. Ullmer and Agnes T. Ullmer.

*Patricia A. Trent, Ltd.,* and *Elyse M. Tyrell,* Las Vegas, for Amici Curiae National Citizens' Coalition for Nursing Home Reform, National Academy of Elder Law Attorneys, National Senior Citizens' Law Center, and National Health Law Program.

## OPINION

By the Court, BECKER, J.:

In this appeal, we consider whether imposing a lien on a deceased Medicaid recipient's interest in a home before the surviving spouse's death[2] constitutes a "recovery" in violation of federal and state Medicaid estate recovery law. We conclude that imposing a lien is not an impermissible "recovery." The State may impose a lien, subject to certain limitations, before the surviving spouse's death upon property in which it has a legitimate interest. However, to prevent spousal impoverishment, the lien must provide that the government release the lien upon the surviving spouse's demand pursuant to any bona fide sale or financial transaction involving the home. We further conclude that Nevada's lien statute requires that the notice of lis pendens, lien proceedings, and the lien itself provide clear and unequivocal notice that the lien is limited to the government's interest in the property, which would include mandatory release provisions.

---

[2]The term "surviving spouse" also refers to other qualified dependents as discussed in 42 U.S.C. § 1396p(b)(2)(A) (2000) and NRS 422.2935(2) (2001) (amended 2003) (current version at NRS 422.29302(2)). This opinion applies equally to qualified dependents.

Because the State sought to impose overly broad liens, we affirm the order granting injunctive relief for the individually named surviving spouses. However, the district court prematurely considered injunctive relief as to the class prior to the end of the class notification period. Accordingly, we reverse the order granting injunctive relief to the class members as a whole.

## FACTS

Appellant State of Nevada, Department of Human Resources, Welfare Division (NSWD) provided Harold Ullmer with Medicaid benefits until his death. At the time of Harold's death, he and his wife, respondent Agnes Ullmer, owned their home in joint tenancy. After Harold's death, Agnes continued to reside in the home.

Thereafter, NSWD recorded a notice of lis pendens and filed a verified petition to impose a lien, which sought to place a lien in the amount of $144,475.76 upon the home to protect future recovery of Medicaid benefits correctly paid by NSWD on Harold's behalf. The notice of lis pendens did not reflect that the lien would only apply to Harold's interest in the home as it existed before his death. Moreover, although NSWD alleges it has an unwritten policy to release liens whenever a surviving spouse seeks to sell or encumber property subject to a lien, the notice of lis pendens and of the proposed lien did not contain language reflecting NSWD's policy.

Agnes filed a class action counterclaim against NSWD, seeking, among other things, to permanently enjoin NSWD from placing liens on the homes of deceased Medicaid recipients' surviving spouses. After the district court certified the class under NRCP 23(b)(3), the district court consolidated a similar Medicaid estate recovery case involving respondent Michael Parco, Sr., with the class action.

Prior to class notification, Agnes, the class representative, filed a motion for issuance of a permanent injunction seeking declaratory and injunctive relief to prevent NSWD from obtaining liens against class members and to remove existing liens imposed against class members. Prior to class notification, the district court granted the motion for injunctive relief. This appeal followed.

## DISCUSSION

An appeal may be taken from the grant or denial of a motion for injunctive relief.[3] We therefore have jurisdiction to consider the propriety of the injunctions issued in this case.

---

[3]NRAP 3A(b)(2).

## I. Premature class action

Because the district court prematurely considered the motion for injunctive relief before the class notification period ended,[4] the order granting injunctive relief as to the class was improper. Therefore, we reverse the order granting injunctive relief entered as to the class members as a whole. We conclude, however, that we may consider the order granting injunctive relief as to Agnes and Parco individually.

## II. Medicaid estate recovery

The question before this court is one of statutory construction, namely, the meaning of federal and state Medicaid estate recovery statutes, 42 U.S.C. § 1396p(b)(2) and NRS 422.2935(2).[5] The phrase ''estate recovery statutes'' refers to a series of state and federal acts designed to recoup monies expended for Medicaid care from the estates of Medicaid recipients. The statutes limit recovery proceedings to protect surviving spouses or qualified dependents from poverty during their lifetimes or dependency. The propriety of the district court's order granting injunctive relief depends upon whether imposing a lien on a deceased Medicaid recipient's interest in a home before the surviving spouse's death is an impermissible ''recovery.''

Issues of statutory construction are subject to de novo review.[6] It is well established that ''[w]hen the language of a statute is plain and unambiguous, a court should give that language its ordinary meaning and not go beyond it.''[7] However, if a statute is susceptible to more than one natural or honest interpretation, it is ambigu-

[4]*See Smith v. Shawnee Library System*, 60 F.3d 317, 322 (7th Cir. 1995); *Gert v. Elgin Nat. Industries, Inc.*, 773 F.2d 154, 159 (7th Cir. 1985); *see generally Schwarzschild v. Tse*, 69 F.3d 293, 295 (9th Cir. 1995) (concluding that the purpose of the class notification requirement is to ensure that a plaintiff class receives notice of an action well before the merits of the class are adjudicated).

[5]Because the cause of action arose and the notice of lis pendens and verified petition for imposition of a lien were filed in 2001, the estate recovery statutes in effect at that time apply. Thus, we do not consider any pending or subsequent statutory amendments. We note, however, that the pending and subsequent statutory amendments do not affect the issue involved here.

[6]*State, Bus. & Indus. v. Granite Constr.*, 118 Nev. 83, 86, 40 P.3d 423, 425 (2002).

[7]*City Council of Reno v. Reno Newspapers*, 105 Nev. 886, 891, 784 P.2d 974, 977 (1989).

ous, and the plain meaning rule has no application.[8] When a statute is ambiguous, the legislature's intent is the controlling factor in statutory interpretation.[9]

Estate recovery acts encompass two important policy considerations relevant to the provision of medical care. First, the government has a legitimate statutory interest in recovering the amount of correctly paid Medicaid benefits from a deceased Medicaid recipient's estate, which includes the recipient's ownership interest in property at the time of death.[10] This interest arises from federal legislation mandating that states establish an estate recovery program in order to receive federal Medicaid funding.[11] Estate recovery provisions were initiated in light of increased demands for Medicaid, which stemmed from the growth of the nation's aging population.[12] Congress was concerned with projections indicating that Medicaid funding will be insufficient to meet claims within the next thirty years.[13] The federal statutes not only condition the states' receipt of Medicaid funding on efforts seeking recovery from a deceased recipient's probate estate,[14] but they also permit states to expand the definition of ''estate'' to include property held in joint tenancy and various other ownership interests at the time of death.[15]

However, the federal and state statutes also reflect concern for the second policy consideration, avoiding spousal impoverishment. Congress has long been concerned with preventing spousal impover-

[8]*See Randono v. CUNA Mutual Ins. Group,* 106 Nev. 371, 374, 793 P.2d 1324, 1326 (1990); *see also Hotel Employees v. State, Gaming Control Bd.,* 103 Nev. 588, 591, 747 P.2d 878, 779 (1987).

[9]*Robert E. v. Justice Court,* 99 Nev. 443, 445, 664 P.2d 957, 959 (1983).

[10]*See* NRS 422.054 (2001) (amended 2003); NRS 422.2935(1) (2001) (amended 2003) (current version at NRS 422.29302(1)).

[11]Omnibus Budget Reconciliation Act of 1993, Pub. L. No. 103-66, § 13612(a)-(c), 107 Stat. 312, 627-28 (codified as amended at 42 U.S.C. § 1396p(b)(1)).

[12]*See generally* Jon M. Zieger, Note, *The State Giveth and the State Taketh Away: In Pursuit of a Practical Approach to Medicaid Estate Recovery,* 5 Elder L.J. 359, 365 (1997).

[13]*Id.* at 374-76.

[14]42 U.S.C. § 1396p(b)(4)(A) (2000).

[15]42 U.S.C. § 1396p(b)(4)(B) (2000) (providing that ''[a]t the option of the State,'' the term ''estate'' may include ''any other real and personal property and other assets in which the individual had any legal title or interest at the time of death (to the extent of such interest), including such assets conveyed to a survivor, heir, or assign of the deceased individual through joint tenancy, tenancy in common, survivorship, life estate, living trust, or other arrangement'').

ishment.[16] The legislation attempts to strike a balance between these policies by limiting reimbursement efforts to situations where impoverishment is no longer an issue.[17] The foremost consideration is enabling states to help more people in need of Medicaid get assistance.[18]

As a result of the federal legislation, Nevada created an estate recovery program.[19] Consistent with the federal mandate, the Nevada statutes broaden the definition of "estate" to include "assets conveyed to a survivor, heir or assign of the deceased [Medicaid] recipient through joint tenancy, tenancy in common, survivorship, life estate, living trust or other arrangement."[20]

Nevada's estate recovery statute furthers the government's legitimate interest in recovering, from a deceased Medicaid recipient's estate so that the government can help more people in need of assistance, the amount of benefits correctly paid.[21] To prevent impoverishment, the government is prohibited from executing its interest when the deceased recipient has a: (1) surviving spouse, (2) surviving child who is under 21 years old, or (3) surviving child who is blind or permanently and totally disabled.[22] In such circumstances, the government must delay executing its interest until the surviving spouse's death or the end of the dependency. This allows

[16]*See generally* Rochelle Bobroff, *Judicial Deference to Federal Government Erodes Medicaid Protections for Elderly Spouses Impoverished by the High Costs of Nursing Home Care,* 29 Wm. Mitchell L. Rev. 159, 160 (2002) ("The purpose of [certain provisions of the Medicare Catastrophic Coverage Act of 1988] was to protect the community spouse . . . from being forced into poverty as a result of the overwhelming cost of nursing home care.").

[17]*See generally* Zieger, *supra* note 12, at 365 (supporting the concept of estate recovery programs as a useful and just method of controlling Medicaid costs while maintaining the smallest possible impact on the surviving spouse and other qualified dependents).

[18]*Id.* (noting that the need for policies that improve the fiscal integrity of Medicaid is becoming increasingly undeniable, in significant part, due to the rapid growth of the elderly population).

[19]NRS 422.2935(1) (2001) (amended 2003) (current version at NRS 422.29302(1)).

[20]NRS 422.054 (2001) (amended 2003) (providing that "undivided estate" includes "all real and personal property and other assets included in the estate of a deceased" Medicaid recipient and any "other assets in or to which he had an interest or legal title immediately before or at the time of his death, to the extent of that interest or title").

[21]*See* Zieger, *supra* note 12, at 365.

[22]*See* NRS 422.2935(2) (2001) (amended 2003) (current version at NRS 422.29302(2)). The term "qualified dependents" is used to describe individuals in categories two and three.

surviving spouses and qualified dependents to use assets, including any ownership interest in a home, to support themselves while recovery is deferred.

Although the government is prohibited from executing its interest until the surviving spouse's death, the government's interest survives and continues with the property. Any individual who takes property upon the death of a Medicaid recipient, through inheritance, assignment, joint tenancy, etc., takes it subject to the government's interest. For instance, in this case, when Harold died and Agnes took Harold's interest in the home through joint tenancy, the government's interest survived. Similarly, any person who acquires an interest in the property through gift or fraudulent transfer, takes the property subject to the State's interest granted by the estate recovery statutes.[23]

The federal Medicaid estate recovery statute, which is the basis for Nevada's statute, provides that any "adjustment" or "recovery" of medical assistance correctly paid to a deceased Medicaid recipient may be made only after the surviving spouse's death.[24] Nevada's Medicaid estate recovery statute provides that the government may not "recover benefits" until after the surviving spouse's death.[25] NSWD argues that imposing a lien before the surviving spouse's death is not an impermissible "recovery." We agree.

Turning to the plain language of the estate recovery statutes, the term "recovery" is not defined. In its every day use, the word "re-

---

[23]NRS 422.2935(3) (2001) (amended 2003) (current version at NRS 422.29302(3)).

[24]*See* 42 U.S.C. § 1396p(b) (2000). The statute states, in pertinent part:

(1) No adjustment or recovery of any medical assistance correctly paid on behalf of an individual under the State plan may be made, except

. . . .

(2) Any adjustment or recovery under paragraph (1) may be made only after the death of the individual's surviving spouse, if any, and only at a time—

(A) when he has no surviving child who is under age 21, or (with respect to States eligible to participate in the State program established under subchapter XVI of this chapter) is blind or permanently and totally disabled, or (with respect to States which are not eligible to participate in such program) is blind or disabled as defined in section 1382c of this title . . . .

[25]*See* NRS 422.2935(2) (2001) (amended 2003) (current version at NRS 422.29302). The statute states, in pertinent part:

The welfare division shall not recover benefits . . . except from a person who is neither a surviving spouse nor a child, until after the death of the surviving spouse, if any, and only at a time when the person who received the benefits has no surviving child who is under 21 years of age or is blind or permanently and totally disabled.

covery'' means ''the regaining of something lost or taken away.''[26] A lien, in and of itself, does not permit the State to regain the sums it expended for Medicaid benefits. Rather, a lien is a security device that binds property to a debt and puts a party on notice that someone besides the owner of the property has an interest in that property. It is ''a claim, encumbrance, or charge on property for the payment of some debt, obligation or duty.''[27] Repayment of the debt evidenced by the lien does not occur until the property is sold or foreclosed upon.[28]

The Nevada statutes themselves support our conclusion that a lien is not a ''recovery.'' NRS 422.29355 permits liens to be placed against the real or personal property of a Medicaid recipient before or after the recipient's death. Moreover, after the recipient's death, a lien may be placed upon the undivided estate of the deceased recipient.[29] As noted above, the undivided estate is broadly defined and includes interests in real property that would normally be extinguished by death, such as joint tenancies.[30] Finally, a Nevada statute provides that the State may foreclose upon a lien, to the extent not prohibited by federal statute.[31] If a lien constituted a ''recovery,'' there would be no need for these statutory provisions.[32]

Additionally, the federal and state statutes place restrictions on when a lien may be imposed during the lifetime of a Medicaid recipient, but contain no similar restrictions upon liens imposed after the death of the recipient. The failure of Congress and the Legislature to impose specific language on the imposition of post-death liens indicates that such liens are not prohibited.[33] While we are aware that the procedure for establishing a governmental interest in a deceased recipient's estate can be frightening and intimidating to the surviving spouse, there is nothing in the congressional record to indicate that imposing a post-death lien is an impermis-

[26]*Random House Webster's College Dictionary* 1087 (2d ed. 1997).

[27]*Black's Law Dictionary* 922 (6th ed. 1990).

[28]*See* Zieger, *supra* note 12, at 373.

[29]NRS 422.29355(3) (2001) (amended 2003) (current version at NRS 422.29306).

[30]NRS 422.054 (2001) (amended 2003).

[31]NRS 108.870 (2001) (amended 2003).

[32]*Paramount Ins. v. Rayson & Smitley,* 86 Nev. 644, 649, 472 P.2d 530, 533 (1970) (''[N]o part of a statute should be rendered nugatory, nor any language turned to mere surplusage, if such consequences can be properly avoided.'' (internal quotation marks and citation omitted)).

[33]*See Coast Hotels v. State, Labor Comm'n,* 117 Nev. 835, 841, 34 P.3d 546, 550 (2001) (''when the legislature has employed a term or phrase in one place and excluded it in another, it should not be implied where excluded''); *Delaney v. Deere and Co.,* 999 P.2d 930, 936-37 (Kan. 2000); *Carver v. Bond/Fayette/Effingham,* 586 N.E.2d 1273, 1276 (Ill. 1992).

sible "recovery." We conclude that a lien, in and of itself, is not an impermissible "recovery."

Agnes also contends that even if a lien is not a recovery, it becomes an impermissible recovery whenever the property subject to the lien is sold or encumbered by the surviving spouse. Agnes argues that the lien itself, if not subject to certain restrictions, has an undeniable chilling effect and becomes due and payable upon a legitimate transaction, such as refinancing the property, which defeats the purpose of ensuring against impoverishment. NSWD argues that the government's interest in the fiscal security of the Medicaid system is not adequately protected if it cannot impose liens. Specifically, NSWD argues that, when a surviving spouse transfers property for less than fair market value or as a gift, the government is frequently unable to execute its interest because the deceased recipient's remaining estate has insufficient assets and the property cannot be traced because the transferees have already conveyed the property to a good faith purchaser for value.

Because the statutory language does not speak to the issue of a lien's effect upon sale or financing of the property, "we construe it according to that which 'reason and public policy would indicate the legislature intended.' "[34]

By delaying "recovery" until after the death of the surviving spouse, Congress has evidenced an interest in ensuring fiscal security for the surviving spouse and avoiding spousal impoverishment. By mandating that states establish estate recovery programs, Congress has established an interest in recovering benefits correctly paid from a deceased Medicaid recipient's estate. In balancing these two significant interests, Congress has created a system that defers "recovery" until the surviving spouse's death. It is clear that Congress intended that a surviving spouse be free to utilize the estate property during the spouse's lifetime. This would include the bona fide sale or financing of the property designed to provide the spouse with income from equity. A state's interest would be extinguished in such a transaction. A state's interest is not extinguished when the deceased recipient's interest in the property is transferred for less than fair market value.[35] Nevada's estate recovery statute is virtually identical to the federal statute. We assume, therefore, that the Legislature also intended to adopt a balance between re-

---

[34]*Nylund v. Carson City,* 117 Nev. 913, 916, 34 P.3d 578, 580 (2001) (quoting *State, Dep't of Mtr. Vehicles v. Vezeris,* 102 Nev. 232, 236, 720 P.2d 1208, 1211 (1986)).

[35]NRS 422.2935(3) (2001) (amended 2003) (current version at NRS 422.29302(3)).

couping Medicaid benefits from a deceased recipient's estate and preventing spousal impoverishment.[36]

We conclude that, to ensure adequate protection of the government's legitimate interest and help protect against fraudulent transfers, the government may impose a post-death lien during the surviving spouse's lifetime upon property in which it has a legitimate interest. However, we conclude that the government's right to impose a lien is not absolute. Nevada's lien statute requires that the lien accurately reflect the State's interest in the property.[37] The liens at issue in this case do not comply with the statute.

First, the notice of lis pendens and the lien do not correctly identify the precise legal interest that the government is claiming, *e.g.,* one-half interest of the property. Second, the notice of lis pendens, lien proceedings, and the lien itself fail to provide clear and unequivocal notice that the government will release the lien upon the surviving spouse's demand for any bona fide transaction, including, but not limited to, selling the property, refinancing the property, and obtaining a reverse mortgage.[38]

In the instant case, the liens go beyond protecting NSWD's interest. Nothing in the notice of lis pendens and the proposed lien contains language indicating the surviving spouses are free to use or dispose of the property, through bona fide transactions, as a method of avoiding spousal impoverishment. Finally, the lis pendens and proposed lien do not accurately indicate they only apply to whatever interest the deceased Medicaid recipient had in the property before his or her death. We conclude that, without such language, the liens are overbroad and violate the spirit of federal and state laws designed to prevent spousal impoverishment.[39] Accordingly, we affirm the district court's entry of a permanent injunction prohibiting NSWD from pursuing the liens in their current form.

## CONCLUSION

Because we cannot ignore the affirmative burden Congress placed on states to establish estate recovery programs, we conclude

---

[36]*See Advanced Sports Info., Inc. v. Novotnak,* 114 Nev. 336, 340, 956 P.2d 806, 809 (1998).

[37]NRS 108.850(1) (2001) (amended 2003) (noting that the lien must comply with federal law).

[38]These requirements are in addition to any existing ones pursuant to statute or regulation.

[39]*Welfare Div. v. Washoe Co. Welfare Dep't,* 88 Nev. 635, 637-38, 503 P.2d 457, 458-459 (1972) (noting we consider the reason and spirit behind a law when determining legislative intent).

that imposing a proper lien is not an impermissible "recovery." Therefore, the government may impose a post-death lien, subject to certain limitations during the surviving spouse's lifetime, upon property in which it has a legitimate interest. To prevent spousal impoverishment, we conclude that the notice of lis pendens, lien proceedings, and the lien itself must provide clear and unequivocal notice that the government will release the lien upon the surviving spouse's demand for any bona fide transaction and accurately reflect the government's interest in the property.

Because the liens that NSWD sought to impose on the Ullmer and Parco homes were overly broad, we affirm the order granting injunctive relief entered in their favor individually. However, we reverse the order granting injunctive relief entered as to the class members as a whole because the district court prematurely considered the matter prior to the end of the class notification period.

SHEARING, C. J., AGOSTI and ROSE, JJ., concur.

MAUPIN, J., with whom GIBBONS, J., agrees, dissenting and concurring in part:

The majority has judicially legislated Medicaid lien rights into being which I believe are at odds with state and federal law. I therefore remain of the opinion that the district court properly granted injunctive relief, prohibiting the imposition of Medicaid liens against homes of surviving spouses of Medicaid recipients.[1]

The Nevada State Department of Human Resources, Welfare Division, enjoys a qualified right of reimbursement of Medicaid benefits from the recipient's estate. However, pursuant to federal law, the Nevada Legislature provides important protection for families that receive Medicaid assistance by prohibiting the Division from effecting reimbursement recovery until after the death(s) of the recipient's surviving spouse, minor children or children with enumerated disabilities.[2] In my view, the imposition of Medicaid lien rights against a recipient's statutory survivor implicates the prohibition against such "recoveries."

To explain, the imposition of a lien against real property held by the survivor, but once owned jointly with the recipient, encumbers the title to that property and works to facilitate the ultimate statutory reimbursement recovery. Accordingly, imposition of lien rights by the Division is inextricably related to enforcement of its right to recover against the recipient's estate. This is underscored by the fact that, regardless of the recitations the majority now requires to

---

[1] I concur in the result reached by the majority, to wit: that the injunctive relief be affirmed as to the individual respondents, and that entry of injunctive relief to the class prior to class notification was premature.

[2] *See* 42 U.S.C. § 1396p(b) (2000); NRS 422.2935(2) (2001) (amended 2003) (current version at NRS 422.29302).

be inserted on the face of the recorded lien document, the recorded lien would still have to be cleared to allow for completion of any legitimate inter vivos transaction entered into by the survivor.

Because the lien rights delineated by the majority impede the ability of the survivor to make transactions concerning his or her property, such rights constitute part of the ''recovery'' process, a process that must await the survivor's demise.[3] I therefore conclude that the Division has no express or implied statutory right to record liens against real property held by the enumerated surviving members of a Medicaid recipient's family.

Although the majority has developed an imaginative and well-meaning remedy to facilitate Medicaid reimbursement recoveries, this judicial creation improperly usurps the Legislature's prerogatives to define Medicaid reimbursement recovery options.[4] The ''balance'' of interests undertaken by the majority between the continuing health of the Medicaid system and the families of Medicaid recipients should be left to the Nevada Legislature.

---

[3]*Webster's Dictionary* defines a lien as

> a charge upon real or personal property for the satisfaction of some debt or duty ordinarily arising by operation of law: a right in one to control or to hold and retain or enforce a charge against the property of another until some claim of the former is paid or satisfied.

*Webster's Third New International Dictionary* 1306 (1968). Recovery is defined in part in *Webster's* as ''a means of restoration.'' *Id.* at 1898. Thus, a ''lien'' is merely a component in the enforcement of a ''recovery.''

[4]I realize that the lien rights defined by the majority work to protect the Division against bad faith transfers of real property to the Medicaid survivor's estate beneficiaries for the purpose of avoiding reimbursement. Again, while this is a worthwhile goal, this lien remedy is part and parcel of a prohibited ''recovery.''