861 A.2d 138 (2004)
373 N.J. Super. 210
ESTATE OF Michael DeMARTINO, Plaintiff-Appellant,
v.
DIVISION OF MEDICAL ASSISTANCE AND HEALTH SERVICES, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued October 4, 2004.
Decided November 10, 2004.
*140 John W. Callinan, Berlin, argued the cause for appellant.
Stephanie M. Beaty, Deputy Attorney General, argued the cause for respondent Division of Medical Assistance and Health Services (Peter C. Harvey, Attorney General, Attorney; Michael J. Haas, Assistant Attorney General, of counsel and Betty M. Ng, Deputy Attorney General, on the brief).
Before Judges LINTNER, YANNOTTI and BILDER.
The opinion of the court was delivered by
YANNOTTI, J.A.D.
Plaintiff Estate of Michael DeMartino ("Estate") appeals from a judgment of the Chancery Division dismissing the Estate's complaint in which it sought the discharge of a lien filed by defendant Division of *141 Medical Assistance and Health Services ("Division") for the recovery of Medicaid benefits paid for Michael's health care. We conclude that the Division validly asserted a lien for the recovery of Medicaid benefits against the assets of the testamentary trust established for Michael's benefit by his wife, Anne. However, because the trial court did not determine the amount of the lien, we remand for further proceedings.

I.
Michael DeMartino and his wife Anne were the owners of a home at 7-M Dennison Drive, in East Windsor, New Jersey. By deed dated September 15, 1999, Michael made a gift of all of his right, title and interest in the property to Anne. Michael entered the Cranbury Nursing Home on April 1, 2000 and he began receiving Medicaid benefits to pay the cost of his care.
Anne DeMartino died on October 29, 2000, leaving a will dated October 19, 2000 that provided for the creation of a testamentary trust for Michael's benefit. In her will, Anne bequeathed to the trustee that portion of the residue of the estate required to satisfy Michael's elective share pursuant to N.J.S.A. 3B:8-1. According to the will, these monies were to be held by the trustee on certain conditions. The will provided:
3.2.1.1.1. Income  My Trustee shall pay to or apply for the benefit of my Beneficiary all of the net income, in quarterly or other convenient installments.
3.2.1.1.2 Principal  My Trustee shall pay to or apply for the benefit of my Beneficiary such amounts of the Trust principal, or all thereof, in such proportions at such time and in such manner as my Trustee, in my Trustee's sole and absolute discretion, may decide is appropriate for the satisfaction of my Beneficiary's special nonsupport needs, if any. As used in this instrument, "special nonsupport needs" refers to the requisites for maintaining my Beneficiary's good health, safety, and welfare when, in the discretion of the Trustee, such requisites are not being provided by any public agency, office, or department of the state where my Beneficiary lives, or of the United States, or are not otherwise being provided by other sources of income available to my Beneficiary. Special nonsupport needs shall include, but not be limited to, the list of suggested nonsupport items set out in this Section.
The will further provided that upon Michael's death, the trustees shall distribute the remaining principal of the trust equally to Anne's children, "and if any of my children fails to survive me, then to such children's descendents on a per stirpes basis."
Theresa Ramellini and Rosemarie Rumac were designated in the will as co-executors of Anne's estate and co-trustees of the trust established for Michael. Ramellini and Rumac are Anne's and Michael's daughters.
According to the complaint, Anne's estate contained the following assets: a checking account with deposits of $5,000, a car with a "blue book" value of about $1,000, and the former marital residence. On April 3, 2001, the residence was sold for a gross sales price of $67,000, with net sale proceeds of $60,729.27 after payment of closing costs. Thus, the gross value of Anne's estate was $66,729.27. Anne's estate allegedly incurred expenses of $8,034.81, leaving a net estate of $58,424.46.
Michael DeMartino died on May 6, 2001. The trust created under Anne's will was not funded during his lifetime. Ramellini *142 claims, however, $925 of Michael's share of Anne's estate was spent for Michael's meals, entertainment, clothes, haircuts and other needs. Ramellini also asserts that $300 from Michael's share was spent for a repast after Anne's funeral "in accordance with [Michael's] wishes."
By letter dated August 23, 2001, the Division informed Ramellini that it was asserting a claim in the amount of $52,522.19 against Michael's Estate for the funds expended by the Medicaid program for Michael's health care. The letter noted that the Division intended to file a lien against the estate to secure its claim pursuant to N.J.S.A. 30:4D-7.2. The Division informed the Estate of the procedures that could be followed if the Estate wished to seek a waiver or compromise of the lien on grounds of undue hardship.
On March 1, 2002, Ramellini filed a complaint on behalf of Michael's Estate in the Chancery Division seeking to set aside the Division's lien. The Estate alleged, among other things, that the Division could not assert a lien against the assets in the trust because, at the time of his death, Michael did not have any "legal title or interest" in the trust assets. The Estate argued that the assertion of the lien contravened federal and state law. In addition, the Estate challenged the validity of N.J.A.C 10:49-14.1(n) which defines "estate" to include assets in certain testamentary trusts. The Estate also argued that the Division had not provided notice of its lien in accordance with federal guidelines.
The trial judge filed his opinion and order on December 24, 2002. The trial judge rejected the Estate's contentions and dismissed the complaint. The judge determined that the Division's lien was valid because the trust assets were part of Michael's "estate" and were subject to Medicaid estate recovery pursuant to state and federal law. The trial judge additionally found that the Division had provided notice of its lien in accordance with applicable federal guidelines. The judge determined that the Division was entitled to recover the monies "that were used to fund the testamentary trust."

II.
On this appeal, the Estate argues that the assets held in the trust created by Anne's will are not subject to recovery by the Division because these assets are not part of Michael's "estate" under 42 U.S.C.A. § 1396p(b)(4)(B) and N.J.S.A. 30:4D-7.2(a)(3). The Estate claims that, at the time of his death, Michael did not have "legal title or interest" in these assets and, therefore, the Division may not reclaim the assets for purposes of recouping the cost of Medicaid benefits paid for Michael's care. We disagree with the Estate's contentions and, for the reasons that follow, conclude that the Division may assert a lien against the trust assets.
Medicaid is a federal-state program "created to provide medical assistance to the poor at the expense of the public." Mistrick v. Div. of Med. Assist. & Health Services, 154 N.J. 158, 165, 712 A.2d 188 (1998) (citing Atkins v. Rivera, 477 U.S. 154, 156, 106 S.Ct. 2456, 2458, 91 L.Ed.2d 131, 137 (1986)). The Federal Government shares the costs of medical assistance with states that elect to participate in the Medicaid program. Id. at 165-66, 712 A.2d 188 (citing Atkins, supra, 477 U.S. at 156-157, 106 S.Ct. at 2458, 91 L.Ed.2d at 137). Participating states must adopt medical assistance plans that meet the requirements of the federal Medicaid law. Harris v. McRae, 448 U.S. 297, 300-301, 100 S.Ct. 2671, 2680, 65 L.Ed.2d 784, 794 (1980); Waldman v. Candia, 317 N.J.Super. 464, 470, 722 A.2d 581 (App.Div.1999), appeal dismissed, 166 N.J. 599, 767 A.2d 480 (2000).
*143 New Jersey has elected to participate in the Medicaid program and its medical assistance program is set forth in N.J.S.A. 30:4D-1 to -42. The Department of Human Services, through the Division of Medical Assistance and Health Services, administers New Jersey's Medicaid program. N.J.S.A. 30:4D-4 and N.J.S.A. 30:4D-5.
Since the enactment of the 1993 Omnibus Budget Reconciliation Act, federal Medicaid law has required participating states to enact certain "estate" recovery provisions as part of their medical assistance plans. See 42 U.S.C.A. § 1396p(b)(1), 42 U.S.C.A. § 1396a(a)(18) and 42 U.S.C.A. § 1396c. States must seek adjustment or recovery [from an individual's estate] of any medical assistance correctly paid on behalf of the individual under the State plan ... [i]n the case of an individual who was 55 years of age or older when the individual received such medical assistance." 42 U.S.C.A. § 1396p(b)(1)(B). States may recover Medicaid benefits after the death of the recipient's surviving spouse provided that the Medicaid recipient leaves "no surviving child who is under age 21, or ... is blind or permanently and totally disabled." 42 U.S.C.A. § 1396p(b)(2)(A). The states also must establish procedures for the waiver of recovery of Medicaid benefits where recovery would work an "undue hardship." 42 U.S.C.A. § 1396p(b)(3).
To meet the federal estate recovery requirements, each participating state must define a decedent's "estate" to include at a minimum "all real and personal property and other assets included within the [recipient's] estate, as defined for purposes of State probate law." 42 U.S.C.A. § 1396p(b)(4)(A). In addition, participating states may adopt a broader definition of "estate" and may include:
any other real and personal property and other assets in which the individual had any legal title or interest at the time of death (to the extent of such interest), including such assets conveyed to a survivor, heir, or assign of the deceased individual through joint tenancy, tenancy in common, survivorship, life estate, living trust, or other arrangement.
[42 U.S.C.A. § 1396p(b)(4)(B).]
New Jersey has enacted legislation to comply with the federal estate recovery requirements. Pursuant to N.J.S.A. 30:4D-7.2(a)(2), the Division may file a lien against and seek recovery of the cost of Medicaid assistance from the "estate" of a deceased recipient. "Estate" is defined in N.J.S.A. 30:4D-7.2(a)(3) consistent with federal law. In addition, the Commissioner of Human Services is required by N.J.S.A. 30:4D-7(j) to take all necessary action to recover the cost of Medicaid benefits correctly provided from the estate of a Medicaid recipient.
The Commissioner of Human Services has adopted regulations applicable to these estate recoveries. The Division is authorized by N.J.A.C. 10:49-14.1(d) to "file any claim or lien against an estate ... within 90 days after receiving actual written notice from the personal representative of the estate or any other interested party of the death of a Medicaid beneficiary." The definition of "estate" in N.J.A.C. 10:49-14.1(1)(2) is essentially the same as the definition of that term in N.J.S.A. 30:4D-7.2(a)(3). The regulations further provide that the term "estate" shall not include:
A testamentary trust established by a third party (including the spouse of the now-deceased Medicaid beneficiary) for the benefit of the now-deceased Medicaid beneficiary, provided that:
i. The trust is a discretionary trust, constructed in such a way that the Medicaid *144 beneficiary could not compel distributions of the trust; and
ii. The trust contains no assets in which the Medicaid beneficiary held any interest within either five years prior to applying for Medicaid benefits, or five years prior to the beneficiary's death....
[N.J.A.C. 10:49-14.1(n)(3).]
Our role is to interpret a federal statute in light of the purposes that Congress sought to achieve through its enactment. Chapman v. Houston Welfare Rights Organization, 441 U.S. 600, 608, 99 S.Ct. 1905, 1911, 60 L.Ed.2d 508, 516 (1979). In doing so, we look not only at the particular statutory language but also to the design of the statute as a whole. Van Holt v. Liberty Mut. Fire Ins. Co., 163 F.3d 161, 166 (3d Cir.1996). We interpret the language of the statute in accordance with its ordinary meaning and in a common sense manner so as to accomplish the purpose and intent of Congress. Liberty Lincoln-Mercury, Inc. v. Ford Motor Co., 171 F.3d 818, 822 (3d Cir.1999).
Congress mandated that participating states adopt the estate recovery provisions and permitted states to adopt an expansive definition of "estate" to address the increased demand for Medicaid benefits from the nation's aging population. State Dep't of Human Resources v. Estate of Ullmer, 120 Nev. 108, 87 P.3d 1045, 1049 (2004)(citing Jon M. Zieger, The State Giveth and the State Taketh Away: In Pursuit of a Practical Approach to Medicaid Estate Recovery, 5 Elder L.J. 359, 365 (1997)). In doing so, Congress intended to give states "wide latitude" in seeking estate recoveries. In re Estate of Thompson, 586 N.W.2d 847, 851 (Sup.Ct.N.D.1998). "Allowing states to recover from the estates of persons who previously received assistance furthers the broad purpose of providing for the medical care of the needy; the greater amount recovered by the state allows the state to have more funds to provide future services." Belshe v. Hope, 33 Cal.App.4th 161, 173, 38 Cal.Rptr.2d 917, 925 (1995).
We are satisfied that, under this particular statutory scheme, the assets of the testamentary trust at issue are part of Michael's "estate" as defined in U.S.C.A. § 1396p(b)(4)(B) and N.J.S.A. 30:7.2(a)(3). Here, the testamentary trust was merely a vehicle for the transfer of Michael's assets to his heirs. Under N.J.S.A. 3B:8-1, Michael had a right to an elective share of Anne's estate equal to one-third of the "augmented estate." The proceeds of the sale of the former marital home were part of Anne's "augmented estate."[1]
Rather than make an outright bequest to Michael of these monies, Anne placed Michael's elective share in a trust under which he had only a life estate in the trust's income and discretionary distribution of trust principal. The trust assets passed to Michael's and Anne's children upon his death. But for the trust arrangement, Michael's elective share would have been part of his own estate and those monies would have been available to the Division for the recovery of the Medicaid benefits paid for Michael's care. By establishing a trust with Michael's elective share and by limiting his interest to a life estate in income and discretionary distributions *145 of trust principal, Michael's assets were transferred to his heirs upon his death.[2]
In our view, a testamentary trust of the sort employed here qualifies as an "arrangement" for the conveyance of the assets of a Medicaid beneficiary within the meaning and intent of 42 U.S.C.A. § 1396p (b)(4)(B). Although created by a third party, rather than the Medicaid recipient, a testamentary trust that effects the transfer of the recipient's assets to his survivors, heirs or assigns, is similar in purpose and effect to the forms of conveyance mentioned in 42 U.S.C.A. § 1396p (b)(4)(B). Such a trust includes a "life estate" for the Medicaid recipient as well as "survivorship" interests for his heirs. When assets of a Medicaid recipient are conveyed to a survivor, heir or assign by such an "arrangement," the assets remain part of the recipient's "estate" pursuant to 42 U.S.C.A. § 1396p (b)(4)(B) and N.J.S.A. 30:4D-7.2(a)(3).
Our conclusion is consistent with the plain language of 42 U.S.C.A. § 1396p(b)(4)(B) and Congress' intent to allow participating states broad authority to seek recovery of Medicaid benefits when a recipient's assets are transferred by the methods of conveyance set forth in the statute, or "other arrangement." Courts in other jurisdictions have interpreted 42 U.S.C.A. § 1396p(b)(4)(B) to allow estate recovery when the recipient's assets are transferred at death by conveyances of the sort mentioned in the statute. See State Dep't of Human Resources v. Estate of Ullmer, supra, 87 P.3d at 1049 (estate recovery permitted against marital home of deceased Medicaid recipient because surviving spouse acquired the recipient's interest through joint tenancy); In re Estate of Thompson, supra, 586 N.W.2d at 850 (state could recover cost of Medicaid benefits from the estate of deceased spouse of recipient if recipient's interest was conveyed to spouse by any of the means identified in 42 U.S.C.A. § 1396p(b)(4)(B)); and In re Estate of Jobe, 590 N.W.2d 162, 165 (Ct.App.Minn.1999)(expansive definition of "estate" in federal Medicaid law allows recovery of Medicaid benefits from non-probate assets conveyed to surviving spouse through joint tenancy or "other arrangement").
Our conclusion is also consistent with the intent of New Jersey's lawmakers to recover correctly paid benefits from the "estates" of deceased Medicaid recipients. That intention is shown by New Jersey's enactment of the expansive definition of "estate" for purposes of estate recovery. N.J.S.A. 30:4D-7.2(a)(3). It is also revealed in the directive to the Commissioner of Human Services in N.J.S.A. 30:4D-7(j) to take "all necessary action" to recover the cost of Medicaid benefits from the estate of recipient. Our Supreme Court has stated that New Jersey Medicaid law reflects an "unmistakable intent to afford the State every opportunity to recoup its payments from third parties." Hedgebeth *146 v. Medford, 74 N.J. 360, 366, 378 A.2d 226 (1977). That same principle applies to "estate" recovery under N.J.S.A. 30:4D-7.2.
The Estate argues, however, that the Division may not recover the assets in the testamentary trust because such a recovery represents the imposition of a "payback" requirement in contravention of federal law. Under federal Medicaid law, transfers of assets are taken into account in determining eligibility for Medicaid benefits. 42 U.S.C.A. § 1396p(c). When certain individuals transfer assets to an inter vivos trust, the transferred assets are not considered in determining eligibility if the trust meets certain conditions. One condition requires that naming of the state Medicaid program as primary remainder beneficiary of the trust assets. See 42 U.S.C.A. § 1396p(d)(4)(A)(B) and (C). The Estate argues that, because Congress has not required a similar "payback" for testamentary trusts, a state Medicaid agency may not recover these trust assets.
We disagree. Congress has enacted specific Medicaid eligibility requirements and also has prescribed the requirements for the recovery by participating states of correctly paid Medicaid benefits. Although federal law expressly requires for eligibility purposes a specific pay back provision in respect of certain inter vivos trusts, that does not foreclose the Division from seeking recovery of assets in a testamentary trust so long as the requirements of U.S.C.A. § 1396p(b)(4)(B) and N.J.S.A. 30:4D-7.2(a)(3) are met.
The Estate also challenges the validity of N.J.A.C. 10:49-14.1(n)(3) which, as stated previously, excludes assets in certain testamentary trusts established by a third party (including the Medicaid recipient's spouse) from the definition of "estate" if the trust is discretionary and contains no assets in which the Medicaid recipient held any interest within a five year "look back" period. The Estate contends that the Division may not treat assets in a testamentary trust as assets of the "estate" of the Medicaid recipient merely because the recipient had an interest in the trust assets in the five-year "look back" period.
In addressing this contention, we are required to accord the administrative regulation a presumption of validity. In re Freshwater Wetlands Protection Act, 180 N.J. 415, 430, 852 A.2d 167 (2004). Therefore, the Estate has a "heavy burden" of demonstrating that the regulatory requirement is arbitrary, capricious or unreasonable. Id. at 431, 852 A.2d 167 (citing New Jersey League of Municipalities v. Dept. of Comm. Affairs, 158 N.J. 211, 222, 729 A.2d 21 (1999)). We will not set aside agency rulemaking unless the agency's action is inconsistent with the legislative mandate. Ibid. (citing In re Township of Warren, 132 N.J. 1, 26, 622 A.2d 1257 (1993)).
As we understand it, the purpose of the regulation is to allow the Division to recover the cost of Medicaid benefits from the assets in a testamentary trust where the trust has been employed as an "arrangement" to transfer the assets of a Medicaid recipient to a survivor, heir or assign. One of the assumptions underlying the regulation is that, if the Medicaid recipient had an interest in the trust assets within the five-year "look back" period, the trust probably is being employed as an "arrangement" to transfer the recipient's assets to the recipient's survivors, heirs or assigns. Although a case may arise presenting circumstances where the validity of this assumption may be called into question, this is not such a case. As applied here, the regulation is entirely consistent with federal and state law.
*147 As we have explained, the testamentary trust at issue was employed as an "arrangement" for the transfer of Michael's assets to his children. Because Michael had a right under N.J.S.A. 3B:8-1 to an elective share of Anne's estate, and because the trust was funded with an amount equal to Michael's elective share, he clearly had an interest in the trust assets when the trust was created. Michael thus had an interest in the trust assets within the five-year "look back" period in N.J.A.C. 10:49-14.1(n)(3)(ii). The fact that Michael did not have complete legal and beneficial ownership of the trust assets at the time of his death is of no consequence. The testamentary trust was employed as a means to limit Michael's ownership of his elective share to a life interest in income and discretionary distributions of trust principal. The trust was little more than a vehicle to convey Michael's assets to his children upon his death, thereby avoiding any potential claim for estate recovery. We therefore conclude that application of the regulation to these facts and circumstances is entirely consistent with 42 U.S.C.A. § 1396p(4)(B)(2) and N.J.S.A. 30:4D-7.2(a)(3).
The Estate next argues that the notice of lien provided to the Estate failed to comply with federal law because the notice was sent to the personal representative of the estate and failed to provide the beneficiaries of the estate notice of the right to apply for an undue hardship waiver or compromise of the lien. The contention is without merit.
The Center for Medicare and Medicaid Services, formerly the Health Care Financing Administration, issues certain mandatory, advisory and optional Medicaid policies and procedures to state Medicaid Agencies. Transmittal 63 defines the type of notice necessary regarding estate recovery: Section 3810(G)(2) states:
You should give a specific notice to individuals affected by the proposed recovery whenever you seek adjustment or recovery. The notice should be served on the executor or legally authorized representative of the individual's estate, or, if these are not known to the State, other survivors or heirs. The executor or legally authorized representative should be required to notify individuals who would be affected by the proposed recovery.
The Division's notice was consistent with the federal requirements as set forth in Transmittal 63. The Division's notice was sent to Ramellini, the executrix of the Estate. The notice informed her of the procedures to be followed to obtain a waiver or compromise of the lien. Moreover, in the notice, the Division instructed Ramellini to inform all persons who might be affected by the proposed estate recovery.
Finally, the trial judge here opined that the amount of the Division's lien is the amount of the monies that were used to fund the testamentary trust. However, the trial judge did not determine the amount of Michael's elective share. The parties disagree as to the amount of the trust assets. The Estate claims that the Division's lien is $9,420.24. The Estate asserts that Michael's elective share must be determined by deducting the estate's administrative expenses as well as amounts expended for Michael's care. The Estate also seeks to deduct the Trustees' commissions and legal fees allocable to this litigation.
In our view, these issues should be addressed in the first instance by the trial court. The Estate has not substantiated its claim for expenses or the amounts allegedly paid for Michael's care. The Estate has not presented an affidavit of services to support a claim for counsel fees. Moreover, there is an issue as to whether *148 the Division's lien should be reduced by the cost of the Estates' unsuccessful challenge to the validity of the lien. These issues should be addressed by the trial court on remand.
Affirmed in part and remanded in part for a determination as to the amount of the Division's lien.
NOTES
[1] The Estate argues that the marital home was excluded from Anne's "augmented estate" pursuant to N.J.S.A. 3B:8-5, which provides that "[a]ny transfer of property shall be excluded from the augmented estate under [N.J.S.A.] 3B:8-3 if made with the written consent or joinder of the surviving spouse." The transfer by Michael to Anne of his interest in the marital home was not a transfer within the ambit of N.J.S.A. 3B:8-3 because that statute applies to transfers by the decedent, not the surviving spouse.
[2] The Estate contends that N.J.S.A. 3B:8-17 specifically permits a decedent to bequeath to the surviving spouse an amount sufficient to satisfy the elective share in the form of a trust. The Estate contends that so long as the surviving spouse has a "present income interest" in the trust assets, the elective share requirements are satisfied. We disagree. The statute cited by the Estate as authority for this proposition merely provides the method by which the surviving spouse's interest in a life estate or trust is to be valued in an action for an elective share. Matter of Estate of Post, 282 N.J.Super. 59, 72-73, 659 A.2d 500 (App.Div.1995). The surviving spouse's interest is valued at one-half of the total value of the property or trust. The statute makes clear that the value of assets subject to a life estate or trust is not the monetary equivalent of the value of an outright bequest of those assets.