**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2052-21

H.L.,

      Petitioner-Appellant,

v.

DIVISION OF MEDICAL
ASSISTANCE AND HEALTH
SERVICES and MONMOUTH
COUNTY DIVISION OF
SOCIAL SERVICES,

      Respondents-Respondents.

_____

Submitted October 23, 2023 – Decided November 16, 2023

Before Judges Mawla and Marczyk.

On appeal from the New Jersey Department of Human Services, Division of Medical Assistance and Health Services.

Michael Heinemann, attorney for appellant.

Matthew J. Platkin, Attorney General, attorney for respondent New Jersey Department of Human Services, Division of Medical Assistance and Health Services (Melissa H. Raksa, Assistant Attorney General, of

counsel; Francis Xavier Baker, Deputy Attorney General, on the brief).

Patrick James Boyle, attorney for respondent Monmouth County Division of Social Services, on the statement in lieu of brief.

PER CURIAM

H.L. appeals from the January 25, 2022 final agency decision of the Division of Medical Assistance and Health Services ("Division") upholding the transfer penalty on H.L.'s receipt of Medicaid benefits. In doing so, the Assistant Commissioner adopted the decision of the Administrative Law Judge ("ALJ"). We affirm.

I.

H.L. was institutionalized at a long-term skilled nursing facility in June 2020. In September 2020, H.L. applied for managed long-term services and supports ("MLTSS") Medicaid benefits to the Monmouth County Division of Social Services ("MCDSS"). H.L. included a letter from her son P.L. dated July 15, 2020, stating H.L. lived with P.L. in Connecticut from January 1996, through January 2020. She continued to live in his home when P.L. moved to Georgia in January 2020, until June 2020, when she went to a nursing home.

On December 9, 2020, the MCDSS sent a letter to H.L.'s Designated Authorized Representative for Medicaid purposes, requesting multiple

verifications to determine Medicaid eligibility.  On December 24, 2020, the MCDSS received another letter from P.L. dated July 21, 2020,[1] explaining H.L.'s spending habits.  He stated H.L. lived in his house and "paid rent, utilities, transportation, . . . total[ing] $875[]," and that "she spent the rest as her personal allowance which was often too little so [he] help[ed] her out."

By correspondence dated January 4, 2021, the MCDSS sent a request for additional information, asking H.L. to verify sixty transactions[2] made during the five-year look-back period, from September 2015 to September 2020.  Specifically, the letter stated:

> AS THERE COULD POSSIBLY BE A GIFTING PENALTY INVOLVED DUE TO MONIES GIVEN TO [H.L.]'S SON, A FULL LOOK BACK AT HER RESOURCES WAS PERFORMED.  PLEASE SEE THE ATTACHED LARGE TRANSACTION LIST.  PLEASE VERIFY EACH TRANSACTION.  FOR WHICHEVER TRANSACTIONS ARE EXPLAINED BY THE 7/21/20 UNSIGNED LETTER FROM [P.L.], PLEASE PROVIDE A COPY OF ANY RENTAL

---

[1] We assume this letter was misdated as July 21, 2020, and was actually prepared on December 21, 2020, as it was in response to the December 9, 2020 letter from the MCDSS.  Moreover, it was stamped received on December 24, 2020.

[2] The transactions, totaling $58,000, were cash withdrawals between $700 and $1,800.  Most of the funds were between $900 and $1,000 and were primarily withdrawn once per month, but on some occasions multiple withdrawals were made in a single month, and in other months, no cash withdrawals were made. Three $1,000 transactions in 2020—May 7, June 3, and August 7—were direct transfers to H.L.'s son's account.

A-2052-21

AGREEMENTS SIGNED BY [H.L.] AND HER SON, [P.L.]  ANY AGREEMENTS SHOULD HAVE BEEN WRITTEN UP [AND] SIGNED AT THE TIME THEY BEGAN LIVING TOGETHER.  PLEASE ALSO PROVIDE ANY CHECKS/BILLS/RECEIPTS TO VERIFY HER LIVING EXPENSES, ETC.  PLEASE MAKE SURE ANY WRITTEN ATTESTATIONS ARE SIGNED BY THE ATTESTOR.

On January 14, 2021, H.L. submitted a certification stating she lived with her son since 1996.  H.L. further stated how she would withdraw one large amount from her bank account each month for all of her daily expenses and that she gave $875 to P.L. "for rent, and other miscellaneous expenditures for [her] daily living."  Additionally, H.L. attested she "did not give any of [her] funds to [her] family as a gift and used [her] minimal income for only [her] expenses monthly."  The MCDSS advised in their January 19, 2021 letter that a 162-day penalty would be imposed related to transfers totaling $58,000 for less than fair market value during the five-year look-back period.

On February 9, 2021, the MCDSS revised the penalty to 139 days based on transfers totaling $49,875 to P.L. during the look-back period.  The revision was a result of both H.L. and P.L.'s certifications to the MCDSS that $875 of the withdrawn funds each month related to rental payments from H.L. to P.L. Because there was still no verification of a rental or expense agreement, the MCDSS found the reduced $875 transactions fell under "love and affection."

4

The MCDSS relied on N.J.A.C. 10:71-4.10(b)(6)(i) for the proposition that transfers made for "love and affection" are not considered a transfer for fair market value. The MCDSS reduced each original penalty transaction to the attested rental amount of $875.[3] The MCDSS determined the excess amount of each $875 withdrawal was used for H.L.'s living expenses, and this excess amount was not included in the revised penalty total. Thus, for each transaction, any amount in excess of $875 was accepted by MCDSS as H.L.'s living expenses and was not included in H.L.'s total penalty.

In the same February 9, 2021 letter, the MCDSS approved H.L.'s Medicaid application effective August 1, 2020. However, because of the imposition of the 139-day penalty, Medicaid would not cover H.L.'s room and board at her nursing facility from August 1, 2020, to December 18, 2020. H.L. requested an administrative hearing, and the matter was transmitted to the Office of Administrative Law.

On October 19, 2021, a hearing was held before an ALJ. An MCDSS worker testified on its behalf. She explained the MCDSS's application process, how she reviewed H.L.'s application for benefits, the rationale behind reducing

---

[3] Both H.L. and P.L. initially stated H.L. paid monthly rent in the amount of $875. However, P.L. later certified he did not mean to state that H.L. paid "rent." Rather, he claimed she merely contributed towards "household expenses."

the penalty based on the attestations provided by H.L. and P.L., and the reasoning supporting the 139-day transfer penalty based on H.L.'s failure to produce a rental agreement or any form of receipts, bills, or invoices substantiating her living expenses.

H.L. submitted a certification from P.L. dated October 18, 2021, which stated that "nearly all" of H.L.'s income went towards her share of the household expenses. P.L. certified he did not have any rental agreement with H.L. because "we do not charge family members rent but family members, sharing a home, all contribute towards their share of the household expenses." Neither H.L. nor P.L. testified at the hearing.

On November 4, 2021, the ALJ issued an initial decision affirming the 139-day transfer penalty. The ALJ found H.L.: lived with her son for approximately twenty-five years; had a fixed monthly income that never exceeded $1,037.24; gave her son $875 monthly; and had no rental agreement or expense agreement with P.L. during the five-year look-back period. The ALJ noted the inconsistencies between H.L.'s January 14, 2021 certification, wherein she stated she paid rent and other expenses, and P.L.'s representation in his July 21, 2020 letter that H.L. paid $875 for rent, compared with P.L.'s subsequent October 18, 2021 certification, which stated H.L. paid no rent, but instead paid

for her daily living expenses. Regarding a lack of documentation, the ALJ noted H.L. provided no rental agreement, nor any receipts or bills to corroborate the monthly expenses H.L. purportedly paid.

Ultimately, the ALJ found H.L. failed to meet her burden of showing P.L. was entitled to compensation related to household expenses or rent during the look-back period. The ALJ also concluded H.L. failed to rebut the presumption that $49,875 was transferred from her account to establish Medicaid eligibility and was therefore subject to a 139-day transfer penalty. H.L. filed exceptions to the initial decision.

On January 25, 2022, in a final agency decision, the Division adopted the ALJ's initial finding that H.L. failed to rebut the presumption that these transfers were done for the purposes of qualifying for Medicaid under N.J.A.C. 10:71-4.10(j). The Division agreed H.L. failed to demonstrate through credible documentary evidence the purpose of the specific transfers at issue. Specifically, both H.L. and P.L. did not provide any rental agreement, receipts, bills, invoices, or other documentation showing the specific household expenses that H.L. allegedly helped pay or how it was determined what portion of the household expenses she would pay.

The Division also noted the contradictions in H.L.'s and P.L.'s statements. The Division stated, "both [H.L.] and P.L.'s previous statements to [the] MCDSS advised that these $875 payments to P.L. were for rent, which P.L. now states is not the case." Additionally, the Division noted the transfers directly to P.L.'s account, particularly those occurring in June and August 2020, appeared to have been made after H.L. moved out of P.L.'s house and into a nursing home. H.L. would not have been living with P.L. during the time these transactions occurred, and H.L. did not provide an explanation for the transfers.

Ultimately, the Division adopted the findings of the ALJ. It held that H.L. had failed to meet her burden to show the transfers at issue were solely for a purpose other than to qualify for Medicaid.

II.

On appeal, H.L. argues the final agency decision adopting the ALJ's imposition of a transfer penalty was arbitrary, capricious, and unreasonable. She contends the term "rent" was ambiguous as utilized in both P.L.'s July 21, 2020 letter and H.L.'s January 14, 2021 certification. H.L. claims both of those letters are unclear on which portion of the $875 was used for rent, and what was meant by the term "rent." She argues her son's October 18, 2021 certification made clear there was no formal rental agreement and that H.L. simply contributed

toward her share of household expenses. H.L. further asserts the Division improperly disregarded P.L.'s October 18, 2021 certification.

Our role in reviewing the decision of an administrative agency is limited. In re Stallworth, 208 N.J. 182, 194 (2011) (citing Henry v. Rahway State Prison, 81 N.J. 571, 579 (1980)). We accord a strong presumption of reasonableness to an agency's exercise of its statutorily delegated responsibility and defer to its fact-finding. City of Newark v. Nat. Res. Council in Dep't of Env't Prot., 82 N.J. 530, 539 (1980); Utley v. Bd. of Rev., Dep't of Lab., 194 N.J. 534, 551 (2008). We will not upset the determination of an administrative agency absent a showing that it was arbitrary, capricious, or unreasonable; that it lacked fair support in the evidence; or that it violated legislative policies. Lavezzi v. State, 219 N.J. 163, 171 (2014); Campbell v. Dep't of Civ. Serv., 39 N.J. 556, 562 (1963). "A reviewing court 'may not substitute its own judgment for the agency's, even though the court might have reached a different result.'" In re Stallworth, 208 N.J. at 194 (quoting In re Carter, 191 N.J. 474, 483 (2007)).

In determining whether agency action is arbitrary, capricious, or unreasonable, a reviewing court must examine:

> (1) whether the agency's action violates express or implied legislative policies, that is, did the agency follow the law; (2) whether the record contains substantial evidence to support the findings on which

the agency based its action; and (3) whether in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors.

[Ibid. (quoting In re Carter, 191 N.J. at 482-83).]

"The party challenging the agency action has the burden to show that the administrative determination is arbitrary, capricious, or unreasonable." In re Renewal Application of TEAM Acad. Charter Sch., 247 N.J. 46, 73-74 (2021) (citing Lavezzi, 219 N.J. at 171).

"Medicaid is a federally-created, state-implemented program that provides 'medical assistance to the poor at the expense of the public.'" In re Est. of Brown, 448 N.J. Super. 252, 256 (App. Div. 2017) (quoting Est. of DeMartino v. Div. of Med. Assistance & Health Servs., 373 N.J. Super. 210, 217 (App. Div. 2004)); see also 42 U.S.C. § 1396-1. To receive federal funding, the State must comply with all federal statutes and regulations. Harris v. McRae, 448 U.S. 297, 301 (1980); see also 42 U.S.C. § 1396a(a)-(b). The State must adopt "'reasonable standards . . . for determining eligibility for . . . medical assistance . . . [that are] consistent with the objectives' of the Medicaid program[,]" Mistrick v. Div. of Med. Assistance & Health Servs., 154 N.J. 158, 166 (1998) (first alteration in original) (quoting L.M. v. Div. of Med. Assistance & Health Servs., 140 N.J. 480, 484 (1995)), and "provide for taking into account only such

10

income and resources as are . . . available to the applicant." N.M. v. Div. of Med. Assistance & Health Servs., 405 N.J. Super. 353, 359, (App. Div. 2009); see also 42 U.S.C. § 1396a(a)(17)(A)-(B).

New Jersey participates in the federal Medicaid program pursuant to the New Jersey Medical Assistance and Health Services Act, N.J.S.A. 30:4D-1 to -19.5. Eligibility for Medicaid in New Jersey is governed by regulations adopted in accordance with the authority granted by N.J.S.A. 30:4D-7 to the Commissioner of the Department of Human Services (DHS). The Division is the agency within the DHS that administers the Medicaid program. N.J.S.A. 30:4D-5, -7; N.J.A.C. 10:49-1.1. Accordingly, the Division is responsible for protecting the interests of the New Jersey Medicaid program and its beneficiaries. N.J.A.C. 10:49-11.1(b).

H.L. applied for institutional-level Medicaid benefits while she was residing in a skilled nursing home. The Division provides such benefits pursuant to the Medicaid Only program, N.J.A.C. 10:71-1.1 to -9.5. Among other eligibility requirements, an individual seeking such benefits must have financial eligibility as determined by the regulations and procedures. See N.J.A.C. 10:71-1.2(a). The local county welfare agencies evaluate eligibility, which in this case is the MCDSS. N.J.S.A. 30:4D-7a; N.J.A.C. 10:71-1.5, -2.2(c). Through those

11

county agencies, the Division serves as a "gatekeeper to prevent individuals from using Medicaid to avoid payment of their fair share for long-term care." W.T. v. Div. of Med. Assistance & Health Servs., 391 N.J. Super. 25, 37 (App. Div. 2007).

The transfer of an asset for less than fair market value during the look-back period raises a rebuttable presumption that the asset was transferred for the purpose of establishing Medicaid eligibility. H.K. v. Dep't of Hum. Servs., 184 N.J. 367, 380 (2005) (citing N.J.A.C. 10:71-4.10(j)); see also 42 U.S.C. § 1396p(c)(1). To rebut that presumption, the applicant must present "convincing evidence that the assets were transferred exclusively (that is, solely) for some other purpose." N.J.A.C. 10:71-4.10(j). The presumption "shall be considered successfully rebutted only if the applicant demonstrates that the asset was transferred exclusively for some other purpose." N.J.A.C. 10:71-4.10(l)(1). "If the applicant had some other purpose for transferring the asset, but establishing Medicaid eligibility appears to have been a factor in his or her decision to transfer, the presumption shall not be considered successfully rebutted." N.J.A.C. 10:71-4.10(l)(2). The regulations are clear that the applicant bears the burden of proof to rebut the presumption by presenting credible documentary evidence of the fair market value of the transferred assets. N.J.A.C. 10:71-

4.10(j). The regulation allows the applicant to rebut the presumption that an unauthorized Medicaid transfer occurred by submitting "any pertinent evidence (for example, legal documents, realtor agreements, and relevant correspondence) with regard to the transfer." N.J.A.C. 10:71-4.10(j)(2).

If it is determined the applicant transferred an asset for less than fair market value during the look-back period to become eligible for Medicaid institutional-level services, the applicant will be subject to a period of Medicaid ineligibility to be imposed once he or she is otherwise eligible for Medicaid benefits. N.J.S.A. 30:4D-3(i)(15)(b); N.J.A.C. 10:71-4.10(c)(4).

Guided by these principles, we affirm substantially for the reasons set forth in the Division's final agency decision, which is supported by sufficient credible evidence in the record as a whole. R. 2:11-3(e)(1)(D). We add the following comments.

The Division did not "disregard" P.L.'s supplemental certification. Rather, the Division correctly noted that while hearsay statements are admissible in contested hearings before the ALJ, "legally competent evidence must exist to support each ultimate finding of fact to an extent sufficient to provide assurances of reliability and to avoid the . . . appearance of arbitrariness." See N.J.A.C. 1:1-15.5(b). The Division observed H.L. failed to provide any documentation

from the five-year look-back period to support her assertions that the funds paid to P.L. were used for household expenses. The Division further noted the contradictions in the various statements submitted to the ALJ, coupled with the fact that no witnesses testified on behalf of H.L. to explain the discrepancies. Finally, the Division noted that after H.L. was placed in a nursing home there were "at least three separate transfers in the amount[] of $1,000 [from her account]" which could not have been contributions for her household expenses at P.L.'s residence as she was no longer living there. In short, H.L. failed to provide evidence to rebut the presumption the transfers were made to qualify for Medicaid eligibility.

We discern no basis to disturb the Division's findings and conclude the decision was not arbitrary, capricious, or unreasonable. To the extent we have not specifically addressed any of H.L.'s remaining arguments, we conclude they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2052-21