# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited.  R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2316-23

A.D.,

     Petitioner-Appellant,

v.

ESSEX COUNTY DEPARTMENT
OF FAMILY SERVICES,

     Respondent-Respondent.

_____

          Submitted April 8, 2025 – Decided May 5, 2025

          Before Judges Smith and Vanek.

          On appeal from the New Jersey Department of Human Services, Division of Medical Assistance and Health Services.

          Hauptman & Hauptman, PC, attorneys for appellant (Yale S. Hauptman, on the briefs).

          Matthew J. Platkin, Attorney General, attorney for respondent (Sookie Bae-Park, Assistant Attorney General, of counsel; Francis X. Baker, Deputy Attorney General, on the brief).

PER CURIAM

Petitioner A.D.[1] (petitioner) appeals from a March 6, 2024 Division of Medical Assistance and Health Services (DMAHS and agency) final decision denying petitioner's Medicaid application. Petitioner argues that the final decision was arbitrary, capricious, and unreasonable. We affirm.

I.

Petitioner lived in an assisted living facility in West Orange, New Jersey.[2] On December 17, 2022, petitioner's designated authorized representative (DAR) applied for Medicaid benefits, requesting coverage effective November 1, 2022. On December 30, 2022, DMHAS issued a "request for information" letter to the petitioner. Petitioner's DAR failed to provide the requested information, and consequently, DMHAS denied the application.

On February 21, 2023, petitioner filed a second Medicaid application, seeking coverage retroactive to November 1, 2022. On March 1, 2023, the County Social Service Agency (CSSA) sent petitioner a letter requesting that they: provide a letter from the Department of Veterans Affairs (VA) identifying what portion of their survivor's benefit is Aid and Attendance; establish and fund a Qualified Income Trust (QIT), if their combined income was above $2,772 per

_____

[1] We use initials to preserve the party's privacy. R. 1:38-3(d)(10).

[2] Petitioner has passed away.

month; and provide bank statements showing that their combined resources were at or below $2,000.

On March 16, 2023, the DAR responded on behalf of the petitioner. Regarding the sought-after document, the DAR stated, "the VA does not provide a separate breakdown of the Aid and Attendance Income" and directed the CSSA to the VA letter previously provided. The DAR also stated that "no QIT was established, nor was it required." The DAR provided a bank statement for the period from October 8 through November 22, 2022, as well as a payment ledger from Brookdale Senior Living.

On March 16, 2023, the CSSA denied petitioner's application. The denial letter stated that petitioner failed to provide: a VA pension letter that shows the portion for Aid and Attendance; proof of an established and funded QIT account; and statements showing that petitioner's combined resources were $2,000 or less.

At Petitioner's request, an Administrative Law Judge (ALJ) conducted a hearing and issued an initial decision on June 3, 2023. The ALJ found the agency improperly denied petitioner's application, citing an agency directive and

federal caselaw.[3]  The ALJ awarded retroactive eligibility effective November 1, 2022.

On August 28, 2023, the Assistant Commissioner of DMAHS reversed, remanding the matter "for a determination related solely to whether petitioner timely provided the outstanding verifications prior to the denial of petitioner's application."

On remand, the ALJ found petitioner complied with the agency's request and timely explained the lack of need for a QIT.  The ALJ also found the agency failed to follow its own policy, as outlined in Med-Comm 15-08.[4]  The ALJ again found for petitioner.

On March 6, 2024, the Assistant Commissioner of DMAHS issued a final agency decision rejecting the ALJ's decision for the second time.  The Assistant Commissioner found petitioner failed to provide the requested information, including a breakdown of the VA pension letter showing what portion is attributable to Aid and Attendance, and statements showing petitioner's combined resources were below the resource level.

---

[3]  Galletta v. Velez, No. 13-532 2014 LEXIS 75248 (D.N.J. Jun. 3, 2014).

[4]  Med-Comm 15-08 provides guidance to Medicaid eligibility determining agencies about how to handle VA benefits when evaluating an applicant's eligibility for Medicaid.

A-2316-23

Petitioner appeals, arguing that the Assistant Commissioner's decision was arbitrary, capricious, and unreasonable. Their argument has three separate components: the Assistant Commissioner erred by finding petitioner's resources exceeded the Medicaid resource limit; no QIT was necessary because VA Aid and Attendance benefits are not counted as income for Medicaid eligibility purposes; and documents requested by the agency for post-eligibility purposes cannot form the basis for denying Medicaid eligibility.

II.

"This court's review of DMAHS's determination is ordinarily limited." C.L. v. Div. of Med. Assistance & Health Servs., 473 N.J. Super. 591, 597 (App. Div. 2022). "An administrative agency's decision will be upheld 'unless there is a clear showing that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record.'" R.S. v. Div. of Med. Assistance & Health Servs., 434 N.J. Super. 250, 261 (App. Div. 2014) (quoting Russo v. Bd. of Trs., Police & Firemen's Ret. Sys., 206 N.J. 14, 27 (2011)). "The burden of demonstrating that the agency's action was arbitrary, capricious or unreasonable rests upon the [party] challenging the administrative action." E.S. v. Div. of Med. Assistance & Health Servs., 412 N.J. Super. 340, 349 (App. Div. 2010) (alteration in original) (quoting In re Arenas, 385 N.J. Super. 440, 443-44 (App. Div. 2006)).

5

"Deference to an agency decision is particularly appropriate where interpretation of the [a]gency's own regulation is in issue." I.L. v. N.J. Dep't Hum. Servs., Div. of Med. Assistance & Health Servs., 389 N.J. Super. 354, 364 (App. Div. 2006). "Nevertheless, we are 'in no way bound by the agency's interpretation of a statute or its determination of a strictly legal issue.'" C.L., 473 N.J. Super. at 598 (quoting R.S., 434 N.J. Super. at 261).

Moreover, "if our review of the record shows that the agency's finding is clearly mistaken, the decision is not entitled to judicial deference." A.M. v. Monmouth Cnty. Bd. of Soc. Servs., 466 N.J. Super. 557, 565 (App. Div. 2021) (citing H.K. v. N.J. Dep't of Hum. Servs., 184 N.J. 367, 386 (2005); L.M. v. Div. of Med. Assistance & Health Servs., 140 N.J. 480, 490 (1995)). The same is true "where an agency rejects an ALJ's findings of fact . . . ." Ibid. (citing H.K., 184 N.J. at 384).

III.

"Medicaid is a federally-created, state-implemented program that provides 'medical assistance to the poor at the expense of the public.'" In re Est. of Brown, 448 N.J. Super. 252, 256 (App. Div. 2017) (quoting Est. of DeMartino v. Div. of Med. Assistance & Health Servs., 373 N.J. Super. 210, 217 (App. Div. 2004)); see also 42 U.S.C. § 1396-1. To receive federal funding, the State of

6

New Jersey must comply with all federal statutes and regulations. Harris v. McRae, 448 U.S. 297, 301 (1980).

Pursuant to the New Jersey Medical Assistance and Health Services Act,[5] DMAHS is responsible for administering Medicaid. N.J.S.A. 30:4D-4. Regulations adopted in accordance with the authority granted to the Commissioner of the Department of Human Services govern eligibility for Medicaid in New Jersey. N.J.S.A. 30:4D-7. DMAHS is the agency within the Department of Human Services that administers the Medicaid program. N.J.S.A. 30:4D-5; N.J.A.C. 10:49-1.1. Through its regulations, DMAHS establishes "policy and procedures for the application process." N.J.A.C. 10:71-2.2(b).

"[T]o be financially eligible, the applicant must meet both income and resource standards." Est. of Brown, 448 N.J. Super. at 257; see also N.J.A.C. 10:71-3.15; N.J.A.C. 10:71-1.2(a). The local County Welfare Agency and its case workers "exercise[] direct responsibility in the application process to . . . [r]eceive applications[.]" N.J.A.C. 10:71-2.2(c)(2). They also "[a]ssure the prompt and accurate submission of eligibility data." N.J.A.C. 10:71-2.2(c)(5).

---

[5] N.J.S.A. 30:4D-1 to -19.5.

"The process of establishing eligibility involves a review of the application for completeness, consistency, and reasonableness." N.J.A.C. 10:71-2.9. While the applicant is "the primary source of information," the case worker is responsible for making "the determination of eligibility and to use secondary sources when necessary, with the applicant's knowledge and consent." N.J.A.C. 10:71-1.6(a)(2). The case worker is not limited in the use of secondary sources to obtain necessary verification information. It is recognized under N.J.A.C. 10:71-4.1(d)(3) that,

> [t]he CSSA shall verify the equity value of resources through appropriate and credible sources . . . . If the applicant's resource statements are questionable, or there is reason to believe the identification of resources is incomplete, the CSSA shall verify the applicant's resource statements through one or more third parties.

The applicant is responsible for cooperating fully with the verification process if the case worker must contact a third-party to verify resources. N.J.A.C. 10:71-4.1(d)(3)(i). The agency may perform a collateral investigation to "verify, supplement or clarify essential information." N.J.A.C. 10:71-2.10(b). Under N.J.A.C. 10:71-2.2, the case worker is required to communicate regarding the claimed deficiencies and under N.J.A.C. 10:71-2.10(b) provide an opportunity for the applicant to verify the information.

A-2316-23

Under Med-Comm 15-08, an applicant with a VA award applying for Medicaid may provide either:

> 1. A letter issued by the VA stating that the entire VA improved pension (VAIP) is classified as aid and attendance; or,
>
> 2. A letter, or other documentation, from the VA reflecting the amounts of countable income and unreimbursed medical expenses (UMEs) used to determine VAIP eligibility and showing that the VA has determined that the UMEs reduce the applicant's income to $0.

Medicaid Communication Med-Comm 12-09 states in pertinent part:

> applicants for any of the medical assistance programs . . . receiving income through the [VA] must provide detailed verification of such income . . . . [I]t is necessary to obtain an in-depth VA Award Letter detailing the benefit(s) the applicant is eligible to receive and specifically indicating the dollar amount of the portion of each benefit that is classified for categories such as but not limited to 'Aid and Attendance' . . . 'Widow Pension' . . . . VA Award Letters just listing the total VA benefit amount will require the detailed benefit breakdowns in order for eligibility to be correctly determined for these applicants.
>
> This detail in benefit is crucial for determining 'countable income,' 'excluded income' or 'specific disregards' for income when calculating program eligibility.  This also impacts the post-eligibility treatment of income determinations.

A-2316-23

A.

Petitioner first contends the VA Award Letter provided in their initial application contained sufficient detail under Med-Comm 15-08 to allow DMHAS to process their application. We consider the applicable law.

Petitioner argues that their letter matches the sample provided by the CSSA for determining what type of VA Award Letter satisfies the required information needed to process a Medicaid application. Div. of Med. Assistance & Health Servs., Medicaid Commc'n No. 15-08, Veteran Affairs Payments 6-12 (2015).

Although petitioner's letter and the VA sample letter appear similar, there is a substantive difference. The CSSA sample letter itemizes the dollar amount allocated to aid and attendance, whereas petitioner's letter provides only the total benefit amount of their surviving spouse award with aid and attendance. Petitioner's letter does not attach a breakdown. Under Med-Comm 12-09, when the VA award only provides a lump sum of aid, a detailed breakdown is required to determine Medicaid eligibility. This deficiency triggered the Med-Comm 15-08 requirement for a detailed letter establishing the specific dollar allocation between surviving spouse benefits and aid and attendance benefits. The burden remains with petitioner to meet this essential requirement.

A-2316-23

Petitioner insists that they supplied the second option. However, the record shows petitioner did not supply the requested breakdown for what part of their aid was "aid and attendance," and not their surviving spouse award. Instead, the submission incorporated all aid in one lump sum even though some of the aid was not "aid and attendance." We note that the record shows DMHAS produced a sample VA document to illustrate the detailed breakdown needed to process petitioner's application, refuting petitioner's argument that no such document existed.[6]

The petitioner's submitted VA award letter did not meet the requirements under Med-Comm 15-08. Additional documentation was required, and petitioner failed to supply it. Without the specific breakdown of VA benefits, the application was incomplete.

## B.

Petitioner argues that, at the time they applied for Medicaid, they were below the resource limit to establish Medicaid eligibility on November 1, 2022. Petitioner also claims they were clinically eligible in November because a Pre-

---

[6] Petitioner also argues that Galletta v. Velez, No. 13-532 2014 LEXIS 75248 (D.N.J. Jun. 3, 2014) is instructive. We disagree. The VA award letter in Galletta satisfied the explicit requirement in Med-Comm 15-08 for submission of a detailed benefit breakdown. Petitioner's submission lacked this detail. This distinction renders Galletta inapplicable.

Admission Screening (PAS) request was sent to the State in December of 2021, and the State failed to timely conduct the screening. We again consider the applicable law.

To qualify for Medicaid benefits petitioners must meet both financial eligibility and clinical eligibility requirements for nursing care services. See N.J.A.C. 10:60-6.2.

To be financially eligible for Medicaid, an applicant's total countable resources cannot exceed $2,000. N.J.A.C. 10:71-4.5(c). A resource is "any real or personal property which is owned by the applicant []or by those persons whose resources are deemed available to [them]. . . and which could be converted to cash to be used for [their] support and maintenance." N.J.A.C. 10:71-4.1(b). Only "available" resources are counted in determining eligibility. N.J.A.C. 10:71-4.1(c). A resource is considered "available" to an applicant if "[t]he person has the right, authority or power to liquidate real or personal property or [their] share of it." N.J.A.C. 10:71-4.1(c)(1). Certain resources are classified as excludable in determining eligibility. N.J.A.C. 10:71-4.4(b).

There must be a determination of clinical eligibility through the PAS procedure. N.J.A.C. 8:85-1.8. PAS is completed by professional staff designated by the Division, "based on a comprehensive needs assessment that

demonstrates that the beneficiary requires, at a minimum, the basic [nursing facility] services described in N.J.A.C. 8:85-2.2." N.J.A.C. 8:85-2.1(a).

N.J.A.C. 8:85-1.8(b)(1) states in pertinent part:

> (b) The New Jersey Medicaid program shall not pay for [a] [nursing facility] . . . unless professional staff designated by the Department has determined that the resident is clinically eligible to receive [nursing facility] services through PAS.
>
> > 1. . . . [T]he effective date of the initial authorization will be the date the PAS is completed.

Med-Comm 16-09[7] states in pertinent part,

> [w]hen [there is] . . . a referral for clinical eligibility of an individual pending Medicaid who is residing in . . . assisting living (AL) . . . the DoAS has a specific number of days in which to complete the assessment. An assisted living (AL) . . . has 14 days and a nursing facility has 30 days . . . .

Petitioner seeks Medicaid eligibility effective November 1, 2022, hence we look back at that time frame to determine it. We first consider financial eligibility.

---

[7] Div. of Med. Assistance & Health Servs., Medicaid Commc'n No. 16-09, Assisted Living (AL), Nursing Facility (NF), and Special Care Nursing Facility (SCNF) Provider Communication: Clinical Eligibility Standards and Timeframes, 1-3 (2016).

On November 1, 2022, petitioner's bank balance was $8,802.00. The petitioner wrote check #1661 of $8,466.20 to their nursing facility on October 17, 2022. The check cleared November 2, 2022. Following N.J.A.C. 10:71-4.5(a)(2), the check reduced petitioner's countable resources to $335.80, falling under the $2,000 resource limit. The November 10 to December 9, 2022 bank statement showed a balance of $2,696.71 at the end of November, exceeding the $2,000 limit. Petitioner now claims that check #1662, written on November 4, 2022, did not clear until November 30, 2022. If true, this would have reduced their balance below the limit. However, the petitioner's bank statement does not corroborate the statement that check #1662 cleared on November 30, 2022. Without proof of clearance of check #1662 petitioner cannot verify the check was deducted from their account. It follows that petitioner's resources of $2,696.71 exceeded the allowable limit on December 1, 2022. The record shows that on January 1, 2023, petitioner's bank statement showed $3,848.30 with no outstanding checks, exceeding the $2,000 resource limit.

We next consider clinical eligibility. To be clinically eligible, the Division must determine eligibility through the PAS procedure. N.J.A.C. 8:85-1.8. Clinical eligibility begins on the date of PAS completion, not the date of request. N.J.A.C. 8:85-1.8(b)(1).

Petitioner argues clinical eligibility should date from when the nursing facility requested the evaluation (allegedly December 16, 2021), rather than when the State completed it. However, this position contradicts the regulation's language, which ties eligibility to determination completion, not request submission.

The record contradicts the petitioner's claim regarding their PAS request date and contains no evidence to support a request date of December 16, 2021. In contrast, there is credible evidence in the record to support a finding that the PAS request occurred on December 29, 2022. The Office of Community Choice Options (OCCO) then approved clinical eligibility on January 9, 2023. The record does not support a finding that a PAS request occurred earlier than December 29, 2022, or that OCCO failed to conduct the screening timely per Med-Comm 16-09 guidelines. We see no reason to disturb the Assistant Commissioner's finding that January 9, 2023 represents the first date of petitioner's clinical eligibility.

To secure Medicaid approval, petitioner needed to satisfy both financial and clinical eligibility requirements simultaneously. The record shows that this never took place.

15

C.

Petitioner next argues that a QIT is not needed because the VA award is not considered income and, therefore, petitioner is under the required income limit. We turn to the applicable standards.

If an applicant's income exceeds the Medicaid income limit, Medicaid eligibility will be denied unless a QIT is used. Div. of Med. Assistance & Health Servs., Medicaid Commc'n No. 14-15, Qualified Income Trust (2014). This requirement arose from changes made to New Jersey's Medicaid program in 2014 to which the State issued Med-Comm 14-15 detailing the new QIT requirement. Without the detailed VA letter, the agency cannot determine whether a QIT is needed. The ample record shows petitioner was over the income limit at all relevant times during the process. It follows that a QIT should have been in place for petitioner to qualify for Medicaid.

Finally, petitioner contends that the agency's requirement for a detailed award letter to establish post-eligibility cannot be a basis for denying a Medicaid application.

Med-Comm No. 12-09 states in pertinent part that

> it is necessary to obtain an in-depth VA Award Letter detailing the benefit(s) the applicant is eligible to receive and specifically indicating the dollar amount of the portion of each benefit that is classified for

categories such as . . . 'Widow Pension' . . . . VA Award Letters just listing the total VA benefit amount will require the detailed benefit breakdowns in order for eligibility to be correctly determined for these applicants.

Med-Comm 15-08 states in pertinent part:

[d]etailed verification of this information can be obtained by requesting a letter from the VA. The VA's letter should detail the benefit(s) the applicant is eligible to receive, including the specific dollar amount attributable to each benefit category.

The detailed breakdown of VA benefits serves a dual purpose: it is necessary both for initial eligibility determination (to accurately calculate what portions count as income under Medicaid regulations) and for post-eligibility treatment of income. Without this detailed breakdown, DMAHS cannot properly assess which portions of the VA benefits should be counted as income and which should be excluded during the initial eligibility determination. The fact that DMAHS also uses this information to determine post-eligibility status does not alter the requirement.

The record shows petitioner submitted a surviving spouse award in their initial Medicaid application. Med-Comm 15-08 requires applicants with this type of award to provide a "detailed letter." Under Med-Comm 15-08, those details include "the benefit(s) the applicant is eligible to receive, including the

specific dollar amount attributable to each benefit category, such as, but not limited to, 'Aid and Attendance,' 'Improved Pension,' 'Widow Pension,' 'Dependent Pension,' 'Housebound Care,' or 'Educational Benefits.'"

Petitioner's letter fails to provide the specific dollar amount "attributable to each benefit category." After our review of the record, we conclude the Assistant Commissioner's final administrative decision was not arbitrary, capricious, or unreasonable.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division